GRIFFITH v. SHAW et al.

(Circuit Court, S. D. Iowa, C. D. September 14, 1898.)

No. 2,350.

1. PATENTS—SUIT FOR INFRINGEMENT—ESTOPPEL OF ASSIGNOR.

The assignor of a patent, when sued in equity by his assignee for infringement, is estopped to aver or attempt to prove that the patent is invalid for want of utility, invention, novelty, or other like reason; and evidence taken by him for that purpose will be stricken out on motion, though no exception was taken to his answer setting up such defense.

2. EQUITY PRACTICE—STRIKING OUT TESTIMONY.

Where a party takes evidence plainly inapplicable to any legitimate issues involved, and for a purpose foreign to the litigation, such evidence will, on motion, be stricken out, and costs imposed on the offending party.

3. PATENTS—INFRINGEMENT—PRESUMPTION FROM ISSUANCE OF PATENT.

The granting of letters patent carries with it the presumption that the article patented is the result of inventive genius, and does not infringe upon any patent previously issued from the same office.

**4. SAME—CONSTRUCTION OF CLAIMS—PIONEER INVENTION.**

Where an applicant for a patent, after the rejection of several broad claims for his invention for want of novelty, and as not patentable in view of the state of the art, acquiesced in such rejections by the filing of a revised claim, covering only certain instrumentalities, all of which were old, in combination, as described in detail, upon which claim a patent was issued, such claim is not entitled to the liberal construction given to pioneer inventions.

**5. SAME—PATENT FOR COMBINATION.**

A claim which by amendment is restricted to a combination in consequence of the rejection of broader claims is to be narrowly construed against the patentee, and strictly confined to the specific combination as described.

**6. SAME—INFRINGEMENT—EQUIVALENT PARTS.**

Where, after the rejection of two broader claims, an application for a combination of instrumentalities in the construction of a calf weaner, and specifying a "flexible strap or chain, a, connecting the chin band with the bow, b," was rejected; one objection stated by the examiner being that "the particular location" of such strap or chain was not set forth, and in response to such objection a fourth amended application was filed, describing the part as "an elastic connection, a, located in the median line of the device, and attached to the chin band and also to the back bow of the cage, all as specified,"—the "particular location" of the part became an essential feature of the combination, which is not infringed by an article in which the part equivalent in its function is attached in a different place.

**7. SAME—RULES OF CONSTRUCTION—SUIT BY ASSIGNEE AGAINST ASSIGNOR.**

The doctrine that the assignor of a patent warrants its validity, which he cannot attack as against his assignee, does not extend to the scope of the patent, which, in a suit for infringement brought by the assignee against the assignor, must be construed in accordance with the same rules that are applied where it is still owned by the patentee.

**8. SAME—CALF WEANERS.**

Patent No. 419,078, for improvement in calf weaners, construed, and *held* not infringed.

This was a suit in equity brought by J. E. Griffith against Samuel E. Shaw and another for infringement of a patent. Heard on the pleadings and proofs.

Silas C. Sweet, for plaintiff.

Poole & Brown, for defendant Shaw.

WOOLSON, District Judge. On January 7, 1890, the defendant Shaw obtained from the United States letters patent No. 419,078, for improvement in calf weaners. On August 11, 1891, he assigned said letters patent and all his interest therein to plaintiff, Griffith, who is the sole owner thereof. Another issue of letters patent for calf weaners was subsequently, to wit, on April 11, 1893, duly granted to said defendant Shaw. The bill herein alleges that the calf weaners manufactured under this second issue of letters patent are an infringement of the first letters patent, and that the defendant Barbee Wire & Iron Works, an Illinois corporation, resident in that state, had, under direction, etc., of defendant Shaw, manufactured a large number of calf weaners, in accordance with the specifications, etc., of said second issue of letters patent, and thereby, to plaintiff's great damage, infringed upon plaintiff's said letters patent; wherefore de-

cree for damages and writ of injunction are prayed. Defendant Barbee Wire & Iron Works has not appeared herein, nor has such service been made thereon as that the court has jurisdiction of said defendant. The issues before the court are between the plaintiff and defendant Shaw only. Counsel for plaintiff has called the attention of the court to what he claims to be such relation and connection of counsel for defendant Shaw with the defendant Barbee Wire & Iron Works as to authorize the court to exercise jurisdiction herein over said last-named defendant. In my judgment, the pleadings, evidence, and record do not authorize the court thus to act. As yet this court has not acquired jurisdiction herein over said defendant works.

The sole issue under the pleadings and evidence herein is whether calf weaners manufactured under the said second issue of letters patent to defendant Shaw for calf weaners infringe the said first issue of letters patent; for the evidence permits no doubt that, since his said assignment to plaintiff of said first letters patent, defendant Shaw has caused to be manufactured and sold calf weaners, substantially in accord with said second letters patent. The answer of defendant Shaw contains much which, had timely exceptions been pressed, must have been stricken therefrom. In many of its paragraphs it is manifestly evasive, and does not fully and directly traverse or meet the issues tendered in plaintiff's bill, as amended. In other particulars it contains matter so open to exception under the general principles relating to equity pleadings that the court would unhesitatingly have purged the pleading had such action been timely invoked. Such action would have lessened the cost of taking testimony herein, as a considerable portion of the testimony taken by defendant Shaw relates to the matters just named.

Before the hearing of this case, plaintiff moved to strike from the files herein a large part of the evidence taken on behalf of defendant Shaw. Action thereon was reserved to the hearing, it appearing impracticable at that time to decide the motion without imposing on the court the labor of considering nearly the entire evidence filed in the case. The ground of the motion was, in substance, that defendant Shaw was estopped to aver or attempt to maintain, as against his assignee, plaintiff, Griffith, that the first issue of letters patent (being the letters assigned, as above stated, by said Shaw to said Griffith) were invalid or voidable for lack of utility, invention, novelty, or other like ground. The general principle is well settled that equity will not permit the assignor of letters patent to urge, as against his assignee thereof, that the letters patent so by him sold and assigned were useless, worthless, and invalid. If the letters are of that nature, the assignor has wronged the assignee in selling and assigning them to him as being valid. When sued in equity for infringement, the assignor is estopped to aver or attempt to prove, as against his assignee, that the assigned letters were thus invalid. This principle is so well established and generally accepted that citation of authority is useless. Paragraphs 14 to 18, inclusive, of the answer of defendant Shaw, contain only averments which, under the rule just stated, have no place therein, and cannot give the right to introduce testimony relating thereto. These paragraphs, together

with the amendment filed December 29, 1897, cannot receive consideration on this hearing, nor can the evidence thereunder be regarded.    Counsel for defendant Shaw has substantially so conceded, but claims such evidence is material and competent as relating to the state of the art at the time of the issue of said first letters patent.    I find nothing in said evidence justifying its being taken for that purpose.    Indeed, a thorough examination thereof now leads me to believe that such testimony was taken with the view of depreciating the market value of the products manufactured under said first letters patent, rather than in good faith for any purpose connected with the issues actually involved and to be decided herein.    The result is that the motion of plaintiff to strike out said evidence will be sustained at the cost of defendant Shaw, such costs to be hereafter determined, and entry relating thereto made when the costs and expenses of taking the same are ascertained.    This matter is therefore referred to the standing master in chancery for the Central division of this district, who will examine and report (1) the several parts of evidence filed on behalf of defendant Shaw which apply to that part of the answer above stated, to wit, paragraphs 14 to 18, inclusive; (2) the cost and fees taxed or taxable herein on account of said several parts just described, as nearly as the same can be ascertained herein; (3) the length of time, number of days, etc., occupied in the taking of said evidence.    The court, on the coming in of such report, will be able to act definitely as to imposition of costs, etc.    The court may not permit its files to be cumbered, and litigants before it to be uselessly and willfully annoyed, harassed, and burdened, with the taking of evidence plainly inapplicable to the legitimate issues before it, and whose taking is for an entirely different object, one not connected in any manner with the litigation before it.

Turning our attention to the question of infringement, under the issues before us, it may be stated that the principle contended for by plaintiff as applicable to the letters patent assigned to him is equally applicable to the second letters patent, viz. that the presumption arises from the issuance of the letters patent that the article therein described and claimed is the result of inventive genius (that is, an invention as understood in patent law), is novel, and is useful, which includes the presumption that the article therein described does not, when manufactured in accordance with the terms of such letters patent, infringe upon any letters patent previously issued from the same office.    So that the second letters patent issued to defendant Shaw will be presumed not to describe and claim that which would be an infringement of the first letters issued to him.    The trial begins with this presumption in favor of the defendant.

Plaintiff claims that the invention secured by the letters patent owned by him—the earlier issue—is a "primary" or "pioneer" invention, and therefore entitled to the broad construction awarded to pioneer inventions under repeated decisions of the supreme court.    In the claim, as stated in his letters patent, the patentee declares that "what I claim as new and desire to secure by letters patent is a calf weaner comprising the following instrumentalities in combination"; and then the particular parts are designated.    Thus, plaintiff's pat-

ent specifically claims a "combination" of instrumentalities. Examining the several "instrumentalities" described, we find none of them new. All are old. The novelty consists in their combination. We now turn to the file wrapper and contents, with reference to the letters patent. We there find that the original claims presented for the patent were four in number, and were rejected at the patent office. Substituted claims, now reduced to two in number, were presented, and these also were rejected. A third presentation, wherein but a single claim is presented, resulted in a further rejection. The claim as it appears in the letters patent was now presented, and with success. The first two rejections are announced by the examiner in charge to have been made because portions of the claims (as same were presented by Shaw) had been anticipated by earlier patents, and because there was stated "no patentable invention in view of the state of the art," as shown by outstanding patents. The third rejection is by the examiner stated to be caused by the indefinite manner in which the particulars of the claim were set forth. And Shaw was notified that "a new claim should be presented in lieu of the present claim to the calf-weaner, consisting of its various parts, setting forth the construction in detail." From none of these several rejections did the inventor appeal. Each was assented to, by his presenting new and revised claims, wherein the inventor sought to obviate the objections which had been urged by the examiner.

In McCarty v. Railroad Co., 160 U. S. 110, 16 Sup. Ct. 240, the supreme court declare of such action on the part of the inventor:

"This claim having been apparently rejected, the patentee abandoned his broad claim for a notched plate, and claimed only a plate in combination with other features of his bolster. His acquiescence in the rulings of the patent office in this particular indicates very clearly that he should be restricted to the combination claimed, and that the case is not one calling for a liberal construction."

An examination of the several letters patent in evidence, which were issued prior to the issuance of plaintiff's letters patent, emphasizes the same view, and brings us clearly to the conclusion that plaintiff's letters patent do not secure a "primary" or "pioneer" invention. He holds simply and only the combination specified in the claim contained in his letters patent.

This leads us directly to consider the contention presented by defendant Shaw, that his present calf weaner, described in said second letters patent, and manufactured for or by him, does not infringe plaintiff's patented claim, in that (1) defendant's present calf weaner does not make use of one of the material elements or "instrumentalities" included in plaintiff's combination claim, viz. the "elastic connection, a, located in the median line of the device, and attached to the chin band and also to the back bow of the cage"; and (2) that defendant does not make use of the "strap loops, C, C, straddling said eyes, d'," with regard to which, in the specifications, it is further stated "the limbs of which are looped astride of the articulating points of the gravitating shield." No rule is better sustained by authority than that which governs the construction of "combination" patents. And especially is it true that, when such combination is

claimed by the inventor after rejection at the patent office of a broader claim, a strict construction of the claim as allowed is required.

Mr. Justice Blatchford, speaking for the supreme court in Sargent v. Lock Co., 114 U. S. 63, 86, 5 Sup. Ct. 1021, 1033, says:

"In patents for combination of mechanism, limitations, and provisos imposed by the inventor, especially such as were introduced into an application after it had been persistently rejected, must be narrowly construed, against the inventor, and in favor of the public, and looked upon in the nature of disclaimers. As was said in Fay v. Cordesman, 109 U. S. 408, 420, 3 Sup. Ct. 236, 244: 'The claims of the patents sued on in this case are claims for combinations. In such a claim, if the patentee specifies any element as entering into the combination, either directly by the language of the claim, or by such a reference to the descriptive part of the specification as carries such element into the claim, he makes such element material to the combination, and the court cannot declare it to be immaterial. It is his province to make his own claim, and his privilege to restrict it. If it be a claim to a combination, and be restricted to specified elements, all must be regarded as material, leaving only open the question whether an omitted part is supplied by an equivalent device or instrumentality. Meter Co. v. Desper, 101 U. S. 332; Gage v. Herring, 107 U. S. 640, 2 Sup. Ct. 819.'"

This general rule of construction is clearly stated by the same learned justice in delivering the decision of the court in Roemer v. Peddie, 132 U. S. 313, 317, 10 Sup. Ct. 98, 99:

"This court has often held that when a patentee, on the rejection of his application, inserts in his specifications, in consequence, limitations and restrictions for the purpose of obtaining his patent, he cannot, after he has obtained it, claim that it shall be construed as it would have been construed if such limitations and restrictions were not contained in it."

—And numerous cases are cited as so holding.

In Knapp v. Morss, 150 U. S. 221, 228, 14 Sup. Ct. 81, 84, the court say with reference to a combination claim then under consideration:

"If, however, the patent could be sustained at all, it would have to be restricted and confined to the specific combination described in the second claim as indicated by the letters of reference in the drawings, and each element specifically pointed out is an essential part thereof [citing numerous cases]; for, if not so restricted by the letters of reference, the effect would be to make the claim co-extensive with what was rejected in the patent office. If any validity could be conceded to the patent, the limitation and restriction which would have to be placed upon it by the action of the patent office, and in view of the prior art, would narrow the claim, or confine it to the specific structure therein described, and, as thus narrowed, there would be no infringement on the part of appellants if a single element of the patentee's combination is left out of the appellant's device."

Applying these announced rules of construction to the patent (first issue) now under consideration, we find that the application as originally presented contains only, in the third claim therein, mention concerning what is, in the patent as issued, described, in its claim, as "an elastic connection, a, located in the median line of the device, and attached to the chin band and also to the back bow of the cage." This is in such third claim spoken of as "the check strap, a." In the specifications as originally presented, this element is spoken of as follows: "This nose shield, A, articulates about the joints, d, d', and is arrested in its downward movement by a flexible strap or chain, a." In the second application the four original claims are stricken out, and two new claims presented. In neither of these is the "strap or

chain, a," mentioned. In the third application the original specifications are amended by inserting therein, after what is above quoted, concerning this "flexible strap or chain, a," 'the words "connecting the chin band, B, with the bow, b." And the two claims contained in the last preceding application are stricken out, and one claim now substituted, which has the following reference to the "flexible strap or chain, a": "And the flexible strap or chain, a, connecting the chin band with the bow, b, to permit the shield to rise and fall while the animal is in the act of grazing." In his letter, following receipt of such third application, the examiner presents, as a part of the objections preventing issuance of patent, the following (it will be noticed that the examiner refers to this "flexible strap or chain, a," as "the spring." That the patentee so regarded it is evidenced by his inserting in his next application "the particular location" of this flexible strap or chain): "* * * The particular location of the spring is not set forth. These are material features in this device, and in these particulars the claim is indefinite. A new claim should be presented in lieu of the present claim to the calf weaner, consisting of its various parts, setting forth the construction in detail." The fourth application amends the original specifications, but in matters not now under consideration. The claim last before presented is stricken out, and in lieu thereof is substituted the claim as contained with the letters patent. It will be noticed that now, and for the first time, and in response to the direction of the examiner, the claim states the location of what is still termed in the specifications "a flexible strap or chain, a." As now presented to the patent office, and in response to the demands of that office for its location, the claim specifies it as "an elastic connection, a, located in the median line of the device, and attached to the chin band and also to the back bow of the cage."

Turning now to the calf weaner manufactured by defendant Shaw, and claimed to be an infringement of plaintiff's patent, we find that it has no "elastic connection, located in the median line of the device, and attached to the chin band and also to the back bow of the cage." Indeed, the form of the calf weaner manufactured by defendant Shaw dispenses with that part of the chin band which, in plaintiff's calf weaner, forms one point for such attachment. Plaintiff insists, however, that the chains l, l, in defendant's calf weaner are the equivalent of the elastic connection or flexible chain or strap in that secured by his patent. But the inventor, in response to the demands of the patent office, has imposed certain limitations and restrictions on this elastic connection, in the claim finally submitted by him and accepted by the patent office. In substance, the office informed him that his application for patent must be rejected, unless he specially and particularly set forth the construction in detail of his calf weaner, including the particular location of this flexible strap or chain. He had previously placed in his specifications one limitation thereon, viz. in his third application, "a flexible strap or chain, a, connecting the chin band, B, with the bow, b." In his last-named and successful application he places thereon the further limitation, making same a part of his claim, viz. "an elastic connec-

tion, ,a, located in the median line of the device, and attached to the chin band and also to the back bow of the cage, all as specified."

Since the particular location and attachments are thus specified in the claim, in response to the demand of the patent office as (in substance) the only grounds on which a patent could issue, the holder of the patent cannot, after issuance of patent, "claim that it shall be construed as it would have been construed if such limitations and restrictions were not contained in it." Roemer v. Peddie, supra. "If not so restricted, the effect would be to make the claim co-extensive with what was rejected in the patent office. * * * The limitation and restriction which would have to be placed on the patent, by the action of the patent office, and in view of the prior art, would narrow the claim or confine it to the specific structure therein described." Knapp v. Morss, supra. I am free to confess that I am not satisfied with the result in this case of the application of these principles. When applied in a suit brought by the patentee as against a stranger to the patent-office proceedings, the rule to which reference has been made appears eminently just. The plaintiff (patentee) is then estopped by his own previous actions. Here, however, the patentee is claiming, in his own favor, for his own benefit, the rule which is generally applied against him. His attitude to the rule is here the reverse of that generally occupied by him when this rule is invoked and applied. He is now claiming that his assignee's right shall be limited and restricted by what he (the patentee) did in the process of obtaining the patent. And thus he is directly invoking, for the purpose of enlarging his rights and lessening his responsibility under the law, the very doctrine which was created and put into force for the contrary purpose, viz. of restricting the rights of the patentee when the patent is presented for construction. This seems, as to plaintiff, Griffith, a harsh application of the doctrine. But I am convinced that it is a just application. When plaintiff bought from defendant Shaw his rights in the letters patent, he had opportunity to ascertain, before purchasing, the exact extent and nature of those rights,—the full scope and force of the patented improvement as secured by the letters patent. While, in some important particulars, the doctrine of estoppel may be invoked by plaintiff as against such defendant, I am not able to see how this doctrine can be applied so that it shall, even against the patentee, protect his assignee in the matters we have just been considering. A plain distinction can here be drawn between the validity and the scope of the letters patent. The validity may not be attacked by such assignor, for his assignment may well be held, in equity, impliedly to warrant or assure to his assignee such validity. But the assignment cannot be held to warrant or assure the scope or extent of the improvement by said letters secured. Since defendant Shaw does not, in his manufactured article, employ any connection "located in the median line of the device," nor any connection attached, as in plaintiff's letters patent, "to the chin band and also to the back bow of the cage," it follows that no infringement herein is proven on this point.

I have examined with care the position assumed by counsel for plaintiff in his brief and oral argument, that defendant Shaw employs

for such elastic connection a mechanical equivalent, and in that manner infringes. But I do not find this position well taken. The narrow construction which must be given to plaintiff's letters patent does not permit such application of the doctrine of mechanical equivalents. In the letters patent the specific location is made a material matter. The court may not declare it immaterial. But, if this were otherwise, I do not find in defendant's calf weaner the mechanical equivalent of this "elastic connection."

While not necessary to the result herein reached, I may add that the position taken by counsel for defendant Shaw, concerning the "loops, C, C, straddling said eyes," etc., being the second point above mentioned, is sustained by the evidence. I find that defendant Shaw does not infringe plaintiff's letters patent in this respect. I will not further prolong this decision to specify the steps bringing me to this conclusion. The result is that plaintiff's bill must be dismissed, at his costs, except with regard to the costs, etc., included in the reference to the standing master, earlier declared herein. Let order of reference to the master be at once entered in the matters hereinbefore ordered referred to him. The formal decree herein will await his report. Let the master proceed with all practicable speed, and report at his very earliest opportunity. Plaintiff and defendant will be regarded as severally excepting to each part of the action pointed out or ordered in the foregoing.