## MASTORAS v. HILDRETH.

(Circuit Court of Appeals, Ninth Circuit. February 24, 1920. Rehearing Denied April 5, 1920.)

No. 3341.

1. PATENTS ⬤283(1)—PATENT FOR INOPERATIVE MACHINE NOT INFRINGED BY OPERATIVE MACHINE.

That under a patent no machine has ever been made and shown to work successfully does not prevent the owner from restraining infringement;

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

but, if the patented device is not operative, it cannot be infringed by one that is.

2. PATENTS ⬤⟳328—FOR CANDY-PULLING MACHINE NOT INFRINGED.
  The Dickinson patent, No. 831,501, for a candy-pulling machine, conceding its validity as for an operative machine, *held* not infringed.

3. PATENTS ⬤⟳112(3)—PRESUMPTION THAT LATER DOES NOT INFRINGE EARLIER PATENT.
  There is a legal presumption that a later patent does not infringe an earlier patent.

4. PATENTS ⬤⟳11—FOR MACHINE DOES NOT COVER MODE OF OPERATION.
  A patent for a machine cannot cover its mode of operation.

Appeal from the District Court of the United States for the District of Oregon; Wolverton, Judge.

Suit by Herbert L. Hildreth against Jim M. Mastoras. Decree for complainant, and defendant appeals. Reversed.

For opinion below, see 253 Fed. 68.

Joseph L. Atkins, W. A. Robbins, and David E. Lofgren, all of Portland, Or., for appellant.

MacLeod, Calver, Copeland & Dike, of Boston, Mass., and Chester G. Murphy, of Portland, Or., for appellee.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

GILBERT, Circuit Judge. The appellant appeals from a decree of the court below whereby he was adjudged to have infringed claim 1 of patent No. 831,501, issued on September 18, 1906, to Herbert M. Dickinson, for an "improvement in candy-pulling machines." The appellant denied infringement and denied the validity of the Dickinson patent.

The only prior patent to which we find it necessary to refer is No. 511,011, issued to Firchau on December 19, 1893, for an improvement in "machines for working or pulling candy." Firchau's machine consists of a fixed drum wherein are placed heads which carry lateral fingers arranged so as to travel in different orbits in opposite directions. In operation the candy is hung upon the upper finger, and, upon the rotation of the heads in opposite directions, it is engaged by the lower finger and stretched in an opposite direction and worked. Say the specifications, "This takes place at each rotation of the heads, the candy being alternately massed and stretched." In the Dickinson machine the candy is placed in a trough some eight feet in length in the bottom of which at the center is placed an upright fixed pin. Attached to an arm pivoted on a transverse traveling bar are two pins which project downwardly and nearly to the bottom of the trough. The bar with the arm on which are fastened the projecting pins is carried back and forth on the top of the trough from one end thereof to the other. As the bar approaches each end, a hook engages the arm from which the pins are suspended and turns it about upon the bar, whereby the pins make in the trough approximately a semirevolution, before returning to the opposite end. The specifications say:

"The candy is acted upon in a manner and by means of the shifting hook along a path corresponding to what I term a figure 8."

Claim 1 is as follows:

"(1) A candy-pulling machine comprising a plurality of oppositely disposed candy hooks or supports, a candy-puller and means for producing a specified relative in-and-out motion of these parts for the purpose set forth."

The machine which was held to infringe is one made under the patent to G. L. Langer No. 1,232,697, issued July 10, 1917, for "a candy-pulling machine." Langer's specifications say:

"My invention relates to candy-pulling machines, and more particularly to a machine adapted to automatically pull candy by means of a floating puller which is carried through a course of travel corresponding in form to the figure 8, and around fixed supporting pins arranged concentrically within the two circular portions of said figure 8, whereby the candy is pulled by said floating puller and alternately carried thereby around said fixed supporting pins."

The machine consists of a base supporting two circular or drum-like castings joined together at one side and standing on edge. In the center of each of these drums, and on either side thereof, is a fixed pin, while a movable pin projecting on each side passes first around one drum and then around the other in continuous operation. Candy is simultaneously pulled on each side of the machine. It is stretched across the fixed pins on either side and above the moving pin. By the movement of the machine the moving pin pulls the candy and wraps it first around one fixed pin, then stretches it and wraps it around the other, and continues that operation alternately from pin to pin, thus pulling and stretching the candy as the floating pin is carried through its course of travel. The essence of the Langer invention is that it is adapted to carry a floating pulling member first around one circular course in one direction, and then around another circular course in the opposite direction. The machine is shown below:

It is said that the Firchau patent has no place in the prior art for the reason that it will not pull candy but will only mix it. To this we can-

not assent. The moving fingers of that device undoubtedly will to some extent pull candy. The candy, being placed upon the upper finger which has projecting knobs to hold it, will as that finger moves be caught by the lower finger and pulled in the opposite direction. If it be said that the pulling operation is not continuous but intermittent, the same may be said of the Dickinson device, for it is obvious that during the travel of the movable pins from the end of the trough toward and to the central pin there is no pulling of the candy or anything more than a pushing of the mass thereof in front of the moving pins. It is only as Dickinson's moving pins travel away from the center and toward the ends of the trough that any tension is placed on the candy. It is thus seen that Dickinson did not get very far beyond Firchau, and that in his device, as in Firchau's, the candy is "alternately massed and stretched." Although claim 1 of the Dickinson patent does not call for means to support the candy against gravity, it is obvious that the device will not operate without a trough for support such as the specifications describe, and that if the pins were placed in a horizontal position they could not be so operated as to sustain the candy against gravity, for the reason of the intermittent relaxation of the candy from all tension. In Hildreth v. Auerbach (D. C.) 223 Fed. 545, Judge Learned Hand said:

"I must confess that the conception of the pins as 'supports' seems to me quite foreign to Dickinson's disclosure."

Dickinson was not the first to invent a machine to pull candy. But if he were the first, as the appellee contends, he acquired no more than the exclusive right to pull candy in the way which he specified, and he is not justified in claiming the exclusive right to pull it in some different way.

The testimony leaves it doubtful whether the Dickinson machine is operative. The only testimony as to its practical operativeness is that of the appellee. He testified that three machines were made, that two of them had been broken up, and that the third was still in his possession; that he did not use it in practical operation; that on one occasion, a number of years after he bought it, he had used and pulled candy with it; and that by shortening the pull and speeding the machine it would "pull candy all right."

"Q. Will it pull it practically? A. Well, practically would be so it would be commercially.

"Q. Well, would it pull it commercially, then? A. Well, not the way we pull our candy. It was not pulled enough. It would pull it, but the stroke was too long. We shortened up the stroke, and made it all right. * * *

"Q. And that would not pull candy until you changed it? A. Oh, yes, it would.

"Q. It would not pull it commercially? A. Well, no. It would not pull it, not as well as we wanted candy pulled."

A witness for the appellant, an experienced candy worker, testified that the Dickinson device would stir candy but would not pull it, and stated as a reason therefor that—

It does not let in enough air, "doesn't get the air to it. It lays flat on the floor there on the bottom of the trough, and it certainly doesn't get air around.

In any of the pulling machines, as it is in existence now, the air is from all sides. It absorbs the air in knocking it around, but this one don't."

The appellee himself has recorded his adverse criticism of the principle on which the Dickinson machine operates. In his specification in letters patent No. 832,384, for a candy-pulling machine, issued to him October 2, 1906, he states:

"Attempts have heretofore been made to work candy in a manner analogous to that in which dough and other substances are treated; that is to say, to place the mass within a receiving or supporting chamber into which moving arms project. An example of this construction is shown in United States letters patent No. 511,011, granted December 19, 1893, to P. J. G. Firchau. In such machines the mass of candy is supported in whole or in part by a chamber, and the function of the moving arms or projections is to alternately mass and stretch the material, as stated in said patent. This method of treatment and the machines which embody it are not successful or practical to produce the results heretofore obtained by hand-pulling, which results must be obtained in any successful candy-pulling machine."

[1] The fact that under a patent no machine has ever been made and shown to work successfully does not prevent the owner of the patent from restraining infringement. Bement v. National Harrow Co., 186 U. S. 70, 90, 22 Sup. Ct. 747, 46 L. Ed. 1058. But it is also true that, if the patented device is not operative, it cannot be infringed by one that is. Royer v. Coupe (C. C.) 29 Fed. 358; General Elec. Co. v. Wise (C. C.) 119 Fed. 922; Hale & Kilburn Mfg. Co. v. Oneonta C. & R. S. Ry. Co. (C. C.) 129 Fed. 598; Bowers v. San Francisco Bridge Co. (C. C.) 91 Fed. 381, 416; Chadeloid Chemical Co. v. Frank S. De Ronde Co. (C. C.) 146 Fed. 988. It is true, as Judge Hough said in Engineer Co. v. Hotel Astor (D. C.) 226 Fed. 779, 783: "A device need not be perfect in order to escape the charge of inoperativeness." But that was a case in which the court found the evidence to show "substantial performance." The case at bar is not one of those in which the first embodiment of a generic invention works imperfectly, but in which the defects may be remedied by readjustment or relative changes in size or shape or construction of members. It is not a case in which the invention as described is crude or defective, but is susceptible of improvement. If there is inoperativeness here, it is inherent in the very conception and structure of the device. If it is not susceptible of use commercially, it has no utility, for it is obvious that such a machine can have no utility except in the commercial field.

[2-4] But aside from the question of the operativeness and utility of the Dickinson machine, we are of the opinion that the decree should be reversed for failure of the appellee to sustain the charge of infringement. It is unnecessary to follow the appellee into the field of his prior litigation in suits in court, or in interference proceedings in which the Dickinson application and several other applications for patents, including an application of the appellee, were involved, resulting in the award of priority to the Dickinson invention. In the determination of the question of infringement involved in the present case, the appellee must stand upon the Dickinson patent. It is a legal presumption that a later patent does not infringe an earlier patent. Putnam v. Keystone Bottle Co. (C. C.) 38 Fed. 234; Ney v. Ney. Mfg. Co., 69

Fed. 405, 16 C. C. A. 293; St. Louis Car-Coupler Co. v. National Malleable Castings Co., 87 Fed. 885, 31 C. C. A. 265; Griffith v. Shaw (C. C.) 89 Fed. 313; Norton v. Jensen, 90 Fed. 415, 33 C. C. A. 441; Century Elec. Co. v. Westinghouse Co., 191 Fed. 350, 112 C. C. A. 8; Benthall Mach. Co. v. National Corporation (D. C.) 222 Fed. 918, 932. Prior to the use of machines, candy was pulled by hand with the aid of a single hook. To pull it successfully by machinery, two or more hooks are necessary. Dickinson used three, and Langer uses three. But the principle and mode of operation of the two machines are different. One of the elements of claim 1 of the Dickinson patent is "means for producing a specified in-and-out motion of these parts for the purpose set forth." Of course, a·specified movement of a machine irrespective of the mechanism which causes it is not patentable. The patent laws give protection to the inventor of a "new and useful art, machine, manufacture, or composition of matter." Here the subject of the patent is a machine, and it creates a monopoly in the use and sale of the machine only. It does not and cannot cover a mode of operation. Burr v. Duryee, 1 Wall. 531, 17 L. Ed. 650; American Crayon Co. v. Sexton, 139 Fed. 564, 71 C. C. A. 548; Knapp v. Morss, 150 U. S. 221, 227, 14 Sup. Ct. 81, 37 L. Ed. 1059.

In Westinghouse v. Boyden Power-Brake Co., 170 U. S. 537, 556, 18 Sup. Ct. 707, 716 (42 L. Ed. 1136), Mr. Justice Brown said:

"Because the law requires a patentee to explain the mode of operation of his peculiar machine, which distinguishes it from others, it does not authorize a patent for·'a mode of operation as exhibited in the machine.'"

Comparing the Dickinson machine with that of Langer, with reference to Claim 1 of the former, we find that Langer's machine has a "plurality of oppositely-disposed candy hooks" which are also supports, and that the Dickinson machine has a plurality of "oppositely-disposed candy hooks" which are hooks only and not supports. Both machines have means for producing a relative in-and-out motion of hooks. Dickinson's claim for a "specified" relative in-and-out motion must be held to mean the in-and-out motion which is specified in the claims and specifications and exhibited by the machine itself. Dickinson acquired no monopoly of all in-and-out motions in candy-pulling machines. It is said that the specification of the Langer patent shows that it adopts the figure 8 movement of the Dickinson patent. It is true that in both patents there is the common use of the term "figure 8," as descriptive of the operation of the respective devices. In the Langer patent the term is applicable, for the moving puller and the candy which it carries describe a true figure 8. In the Dickinson specification two moving pins in conjunction with a stationary pin "move the candy" along a path corresponding to "what I term a figure 8." It is impossible, however, to find in the operation of the Dickinson machine a movement of candy in the course of a figure 8. As the candy reaches the end of the trough, it stands in the shape of a letter V. When the movable pins are reversed, the sides of the V are brought together, and the ends are twisted about, and then the candy is massed and pushed on the reverse movement back to the stationary pin, which again divides it into the form of a letter V. Dickinson's in-and-out

movement is shown by the accompanying plat. The movable pins travel in the trough past the fixed pin $f$, proceeding respectively on the lines $a$ and $b$, to the end of the trough, the right-hand pin in advance of the left. When they reach the end of the trough they are respectively at $d$ and $c$. As they turn to the left on their common axis and start on their return travel, one pin describes the arc $d\ c$, and the other the arc $c\ e$, and they continue in their course past the fixed pin $f$ to the opposite end of the trough, where the same turning movement is repeated.

In the Dickinson machine the pulling pins, yoked together, move with a reciprocating motion back and forth in a trough, with a reversing motion at each end of a trough, and they alternately push and pull a mass of candy lying in a trough. There is no lapping of candy, strand upon strand. In the Langer machine, a single pulling member moving in a continuous circular path continuously exerts a pulling force on a mass of candy suspended in the air.

In Burr v. Duryee, 1 Wall. 531, 572 (17 L. Ed. 650), the court said:

"That two machines produce the same effect will not justify the assertion that they are substantially the same, or that the devices used by one are therefore mere equivalents for those of the other. * * * An infringement involves substantial identity, whether that identity be described by the terms 'same principle,' same 'modus operandi,' or any other. It is a copy of the thing described in the specification of the patentee, either without variation or with such variations as are consistent with its being in substance the same thing. If the invention of the patentee be a machine, it will be infringed by a machine which incorporates in its structure and operation the substance of the invention; that is, by an arrangement of mechanism which performs the same service or produces the same effect in the same way."

And in Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, 569, 18 Sup. Ct. 707, 723 (42 L. Ed. 1136), the court said:

"But, after all, even if the patent for a machine be a pioneer, the alleged infringer must have done something more than reach the same result. He must have reached it by substantially the same or similar means, or the rule that the function of a machine cannot be patented is of no practical value. To say that the patentee of a pioneer invention for a new mechanism is entitled to every mechanical device which produces the same result is to hold, in other language, that he is entitled to patent his function."

The decree is reversed, and the cause is remanded, with instructions to dismiss the bill.