39 C.C.P.A.(Patents)

Application of RAY.

Patent Appeal No. 5897.

United States Court of Customs and Patent Appeals.

June 24, 1952.

Rehearing Denied Sept. 30, 1952.

while, energized to retain the armature member in engagement with said core member after the members are first mechanically brought together; *and mechanical means for moving the members into said engagement and for then sliding their cooperating surfaces relative to each other to ensure intimacy of the engagement.*"

We have italicized the last clause of the claim 'because it is typical of the only material limitation in the appealed claims which differs from a patent, No. 2,245,834, issued to Hubert T. Sparrow June 17, 1941.

In appealed claim 9 it is stated that the purpose of the sliding action defined in the claim is "to ensure intimacy of engagement of the surfaces." In appealed claims 1 and 4 the purpose of the sliding action is stated to be "to ensure intimacy of the engagement."

In appealed claim 5 the limitation reads:

"* * * mechanical means for moving one of said members arcuately into engagement with the other, said mechanical means including means yieldable in a manner to permit sliding of said surfaces relative to each other after initial interengagement of the surfaces."

John Flam, Los Angeles, Cal., for appellant.

E. L. Reynolds, Washington, D. C. (S. W. Cochran, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and JACKSON (retired), Judges.

GARRETT, Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the rejection by the Primary Examiner, hereinafter referred to as the examiner, of claims 1, 4, 5, and 9 of appellant's application for a patent for "Electromagnetically Controlled Operator."

. Two claims numbered respectively 7 and 10 were allowed by the examiner.

Appealed claim 1 is typical of all the appealed claims. It reads:

"1. In an electromagnetically controlled device: an electromagnet comprising a core member and a coil in flux-inducing relation to the core member for energizing the same; an armature member cooperable with said core member; said electromagnet when energized being incapable of attracting said armature member through space, but adapted while, and only

The Sparrow patent was the basic reference relied upon by the tribunals of the Patent Office, although a number of other patents were cited in their decisions.

In view of the conclusion which we have reached upon the narrow issues presented to us by the reasons of appeal, we find it unnecessary to discuss the other references.

We quote here the description given by the board of the device defined by the appealed claims:

"The appealed claims relate to an electromagnetically controlled operating device of the manual reset type in which an electromagnet is provided to retain an armature in attracted position after it is first brought to that position by manually operated means. The electromagnet is defined in the claims as being so designed that it is incapable of attracting the armature through space. In the event of subsequent de-

energizing of the electromagnet, as in response to a change in the controlling condition, the armature is released and thereafter it must be manually reset. *An important feature of the appealed claims is the provision of means for causing relative sliding movement between the pole faces of the electromagnet and the contacting surface of the armature after these parts have been brought into engagement.* Appellant states that by such relative sliding of the surfaces the intimacy of the contact therebetween is improved." (Italics supplied by us.)

The Sparrow patent "relates to a safety control device and more particularly to a gas valve for shutting off the flow of gas in the event of the pilot burner becoming extinguished." The patent, illustrated with drawings, discloses a device consisting of many physical elements arranged in a general combination, which includes some subcombinations.

The rejection of the appealed claims was based upon two grounds.

The first ground, if we understand the decisions aright, is that, by reason of certain structural features defined in the Sparrow patent, the sliding of cooperating surfaces relative to each other is *inherent* in that patent.

The board, in its decision affirming the decision of the examiner, quoted from the specification of the patent a sentence stating, in substance, that by reason of a loose pivotal connection afforded by certain elements designated as "tongues" and an element designated as a "pin" it is possible to move the armature, disclosed in the patent, into very close engagement with the core, and stated:

"In view of this statement by Sparrow, and in view of the frictional forces applied during the actuation of his manual reset means, we believe that this structure inherently provides means for sliding the contacting surfaces relative to each other to insure intimacy of the engagement, as recited broadly in the rejected claims."

The second ground of rejection is stated in the decision of the board as follows:

"* * * As indicated by the Examiner in his rejection, the [appealed] claims depend for novelty on a *means type functional statement relating to a desired mode of operation* and he cites as precedent the case of In re Lawson, 1936 C.D. 585; 30 USPQ 13. Appellant contends that his claims are not directed to a new element, but to a new combination of elements each of which is known in itself. However, *the rejected claims contain functional language at the exact point of alleged novelty.* Such claims were held to be defectively functional in General Electric Co. v. Wabash Appliance Corp., 1938 C.D. 813; 37 USPQ 466." (Italics supplied by us.)

It should be noted that the decision in the Lawson case, supra, was a decision of this court, see 83 F.2d 1001, 23 C.C.P.A., Patents, 1235, and the decision in the case of General Electric Co. v. Wabash Appliance Corp., supra, was by the Supreme Court of the United States, 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402.

It is thought that the precise point involved in the second ground of rejection may be more easily understood from a comparison of the limitations involved in the appealed claims with the limitations involved in the allowed claims. So, we here quote in parallel columns appealed claim 5 and allowed claim 7 with the respective limitations italicized.

### Appealed claim 5.

"5. In an electromagnetically controlled device: an electromagnet comprising a core member having a plane polar surface, and a coil in flux-inducing relation to the core member for energizing the same; an armature member having a plane surface cooperable with said polar surface of the core member; said electromagnet when energized being incapable of attracting said armature member through space, but adapted while, and only while, energized to retain the armature member in engagement with said core member after said surfaces are first mechanically brought together; *and mechanical means for moving one of said*

*members arcuately into engagement with the other, said mechanical means including means yieldable in a manner to permit sliding of said surfaces relative to each other after initial interengagement of the surfaces."*

Allowed claim 7.

"7. In an electromagnetically controlled device: an electromagnet, fixed with respect to said device, comprising a core member having a plane polar surface, and a coil in flux-inducing relation to the core member for energizing the same; a movable armature member having a plane surface cooperable with said polar surface of the core member; said electromagnet when energized being incapable of attracting said armature member through space, but adapted while, and only while, energized to retain the armature member in engagement with said core member after said surfaces are first mechanically brought together; *and a lever member, pivoted on said device on an axis other than in the plane of said polar surface, for supporting the the armature member and movable to swing the armature member arcuately into engagement with the core member, said lever member being so constructed that it can yield to a limited extent so that after initial engagement of said surfaces a sliding movement of the surfaces is effected."*

It is clear that in the allowed claims there is disclosed a definite physical structure which operates to cause a desired relative sliding movement between the pole faces of the electromagnet and the contacting surface of the armature after those parts are brought into engagement.

It is equally clear that in the appealed claims a desired and supposedly novel mode of operation—that is, a function—is recited, but no means for insuring such operation is defined. In other words, the only novelty claimed is a function obtained by means not described in the claims.

Thus, the situation is analogous to that presented in the Lawson case, supra, 83 F.2d 1002, where this court said:

"It will be observed that the Board was of opinion that appellants' contri-bution to the art resided in the specific means, somewhat broadly stated in the allowed claims, by which appellants had solved an obvious · problem, and that, as the appealed claims were sufficiently broad to cover every possible means of accomplishing the desired purpose, they were broader than appellants' invention.

"Counsel for appellants contends that appellants are not attempting to cover 'all ways of maintaining the sinkers in a forward position but limit the claims to such means as will impose a spring pressure on the sinkers, except at or adjacent to the knitting point.' However, it is obvious that the appealed claims include all means for accomplishing the precise purpose to which they are directed, that is, the imposition of a spring pressure on the sinkers, 'except at or adjacent to the knitting point.' [Italics quoted.]

"It may be, as argued by counsel for appellants, that appellants were the first to provide a means to accomplish the desired result. However, they are not, for that reason, entitled to a patent which would include all means for accomplishing such result. See In re Malcolm P. Ferguson, 83 F.(2d) 693, 23 C.C.P.A., Patents, [1143], [Patent Appeal No. 3625] decided June 1, 1936, wherein we cited and quoted from the case of Heidbrink v. McKesson, [6 Cir.] 290 F. 665."

In the instant case, counsel for appellant argues:

" * * * appellant does not cover *all* means *per se* for sliding one member with respect to another; in fact, he could not do so in view of the state of the prior art." (Italics quoted.)

The gravamen of the argument on behalf of appellant is that the appealed claims are allowable "because they cover combinations, and do not depend upon the novelty of any particular element."

It is pointed out that in the drawings "two forms embodying the claimed combination" are shown. This statement apparently is agreed to by the Solicitor for the Patent Office, but it is not agreed that this adds any strength to appellant's case.

We quote from a Memorandum which, by permission of the court, was filed on behalf of appellant subsequent to the oral argument before us:

"The appellant strongly urges that he should not be limited to a *single* form of means for moving the armature and core members into engagement, and for then sliding their cooperating surfaces relative to each other (rejected claim 1); or mechanical means for moving one of said members arcuately into engagement with the other, said mechanical means including means yieldable in a manner to permit sliding of said surfaces (rejected claim 5) (R. 69)." (Italics quoted.)

It seems to us that if appellant is limited to "a single form of means," etc., it is due to the fact that he deliberately chose to define only one form of means *in claims*. He has allowed claims for the form which he did define.

In the Memorandum referred to, it is said:

" * * * attention is invited to pages 11 and 13 of the Transcript. These two sheets of drawings illustrate two forms embodying the claimed combination. In the form shown on page 11, the lever arm 36 purposely is made yielding or resilient in order to give the armature 47 a slight sliding movement upon continued depression of the push button 53. This is specified in the paragraph beginning on page 6 of the Transcript, fifth line from the bottom.

"In the form shown in Fig. 3, arm 81 (corresponding to arm 36 of the first form) is rigid. Nevertheless, as stated on page 9 of the Transcript, this form operates just as well as the first form:

" 'Because of the relatively rigid construction of the arm 81 it is necessary to mount the armature yieldably in order to effect the desired wringing-together of the armature and core.' "

Apparently appellant might have claimed the form disclosed in his Figure 3 had he chosen to define it in a claim, but he did not do so.

In the case of In re Dalton, 188 F.2d 170, 173, 38 C.C.P.A., Patents, 953, 956, this court, speaking through Associate Judge Jackson, and citing authorities, said:

"All of the claims before us are drawn to define structure and in order to be patentable they must depend upon the novel structure set out. Properties, functions, uses, and results that may appear from the defined structure are not definitions of it and may not be solely relied upon to make a claim containing them patentable unless there is a positive setting out of the structure itself in the claims which, of course, must be responsible for properties, functions, uses, and results thereof."

Prior to that decision, this court, speaking through the late Associate Judge Hatfield, in the case of In re Spitzglass, 96 F.2d 1002, 25 C.C.P.A., Patents 1227, discussed and passed upon an issue analogous to that here involved. In the reply filed by the Solicitor for the Patent Office to the Memorandum for appellant in this case, that case is discussed and quoted from as follows:

"As pointed out at the appeal hearing, it is thought that the decision in In re Spitzglass, 25 C.C.P.A. [Patents] 1227 [96 F.2d 1002], includes an enlightening discussion of the proper principles to be applied to claims rejected as functional. The more specific claims in that case called for a calculating device including dials and 'a linkage * * * so constructed and arranged that angular movements * * * of two of the dials in direct proportion to two quantities will cause movement of the third dial in direct proportion to the product of those quantities.' In other claims, the linkage was referred to simply as 'means' for carrying out the desired dial movement. The examiner contended that 'everything novel in the claim is defined in terms of the result obtained by some linkage, but not by any statement of the structural arrangement of the linkage', while appellants contended 'that as the appealed claims are for a combination of elements, it is unnecessary

that the structure of the linkage be set forth therein * * *.' The essential position of the parties, therefore, appears to be identical to those of the parties in the present appeal."

The Court held:

"Obviously, the 'linkage' referred to in claim 1, which is referred to in the other appealed claims as 'means,' does not merely serve to provide a working relation for the dials, but, due to its structure, operates them in such manner that the desired result is obtained. Such operation of the dials is dependent upon the construction and arrangement of the linkage. The linkage, therefore, is the very essence of the invention, and, being such, its mechanical structure or the arrangement of its various parts and not merely its function or the result obtained by its use should be set forth in the claims. Davis Sewing Mach. Co. v. New Departure Mfg. Co., supra [6 Cir., 217 F. 775]; Walker on Patents, Deller's Edition, Vol. 2, p. 790, et seq.

"We have examined each of the appealed claims and are in agreement with the tribunals of the Patent Office that the 'linkage' or 'means' by which the dials are made to cooperate is not defined in terms of mechanical arrangement, but rather in terms of function or result. The claims are sufficiently broad to include all means capable of making the dials perform in the desired manner, and differ from the prior art only in terms of the result obtained. See Ex parte Paige, 1887 C.D. 71; Ex parte Pacholder, 1890 C.D. 55; Ex parte Halfpenny, 1895 C.D. 91, which cases were cited in the decision in the Davis Sewing Mach. Co. Case, supra."

In a reply to the foregoing statement of the solicitor counsel for appellant insists that the decision in the Spitzglass case, supra, is not in point, but we do not agree with that contention. We think the general principle stated in that case is directly applicable here.

■ Long prior to our decision in the Spitzglass case, supra, we passed upon an analogous question, the opinion being written by the late Associate Judge Bland. The case was that of In re John Hays Hammond, Jr., 37 F.2d 760, 761, 17 C.C.P.A., Patents, 803.

We there said:

"The function or movement of a device is not patentable, but the mechanism which produces such movement may be patentable. Mastoras v. Hildreth, 9 Cir., 263 F. 571, 576. In In re Gardner, 32 App.D.C. 249, it was held that a patent cannot issue for a result sought to be accomplished by an inventor of a machine, but a patent will issue only for the mechanical means or instrumentality by which that result is obtained."

It is contended on behalf of appellant that our decision in the case of In re Kirschbraun, 44 F.2d 675, 18 C.C.P.A., Patents, 735, is substantially in point here, but it is pointed out correctly by the Solicitor for the Patent Office that in that case, which dealt with an oil treatment apparatus, "the sole cooperation between the elements of the combination lay in the fact that oil passed from one chamber to the other. There was no structural relationship involving the coordinated movements of parts as is found in the instant apparatus" and that "moreover, the Kirschbraun claims did not include a broad 'means' statement of the type relied on in the instant claims."

Other cases cited in the briefs and memorandum filed have been examined, but we find nothing in them which, in our opinion, supports appellant's position.

We entertain some doubt as to the propriety of the rejection based upon the alleged "inherency" feature of the Sparrow patent—the first ground of rejection—but we are confident the rejection based upon the second ground is sound and the decision of the board affirming the examiner's rejection of appealed claims 1, 4, 5, and 9 on the latter ground is affirmed.

Affirmed.

JACKSON, J., retired, recalled to participate herein.