AMERICAN CRAYON CO. v. SEXTON et al.

(Circuit Court of Appeals, Sixth Circuit. June 12, 1905.)

No. 1,368.

1. PATENTS—PATENTABILITY—MOVEMENT OF MACHINE.
   The movement of a machine irrespective of the mechanism which causes it is not patentable.

2. SAME—INFRINGEMENT—MACHINE FOR MAKING CRAYONS.
   The Liedke patent, No. 476,051, for a machine for making crayons, claim 2, covering a rocking or tilting device for loosing and discharging the crayons from the mold, is valid, and of a primary character, entitled to a liberal range of equivalents. It is not infringed, however, by mechanism for lifting and dropping the molds to accomplish the same purpose, which is not the equivalent of that of the patent.

3. SAME.
   The Cowdery, Curtis & Liedke patent, No. 476,038, for a machine for making crayons, claims 1, 6, and 9, covering mechanism for alternately lifting and dropping the molds for the purpose of jarring the crayons loose, construed, and held valid and infringed.

Appeal from the Circuit Court of the United States for the Northern District of Ohio.

Thomas B. Hall, for appellant.
R. B. Wilson and Hamilton & Kirby, for appellees.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. This was a suit for the infringement of three patents relating to machines for making crayons, but in the court below the complainant (appellant) confined itself to claim 2 of patent No. 476,051, granted May 31, 1892 (application filed October 3, 1887), and claims 1, 6, and 9 of patent No. 476,038, granted May 31, 1892 (application filed January 17, 1889). It comes here on appeal from a decree finding "that the machines owned and used by the defendants, as shown in the proofs and exhibits, do not infringe any of the patents set out in the bill of complaint." There is no opinion of record.

Crayons when molded, tend to adhere to the mold plates. Early in the art—indeed, up to the time of the making of the inventions embodied in the above claims—they were loosened and discharged by hand. These inventions had for their object the loosening and discharging of the crayons by mechanical means: First, through a movement in and by a machine having a rocking or tilting device, of the mold plates relative to one another in line with the length of the mold, so as in turn to strip the crayon from each mold plate (patent No. 476,051); and, second, through a movement, in and by a machine, of the mold plates upwardly and downwardly, alternately being lifted and dropped, so as not only to strip but jar the crayons loose (patent No. 476,038).

1. Patent No. 476,051, as stated in the specification, had for its object "an improved form of mold plates and mold plate frames, the mold plates being pivoted or axially journaled that they may be partially rotated and the crayons loosened or forced from the mold plates." In the description of the mode of operation of the machine it is pointed out that the tilting or partial rotation of the pivoted mold plates results in a movement of the mold plates relative to one another in line with the length of the mold, which causes the crayon to be "loosened or freed forcibly" first from one mold plate and then from the other. "As the force exerted," says the specification, "is applied in the direction of the crayons' length, there.is no possibility of the crayons being broken." Patent No. 476,051 contains 22 claims, but the following is the only one involved:

Claim 2: "In a machine for the manufacture of crayons, carpenters' chalk, or other like articles, the combination of two sectional mold plates together forming a complete mold, said mold being open at one end, said mold plates adjustable relative to each other in line with the length of the mold, substantially as set forth."

It is urged in opposition that this is either a claim for the movement of the mold plates relative to one another, or for the mechanism which produces the movement. If for the former, the claim is void, because it is merely for a function, mode of operation, or result, which cannot be patented. If for the latter, there is no infringement, because the mechanism employed by the appellees differs essentially from that described in the patent, to which, or its equivalent, the words "substantially as set forth" limits the invention.

It is also insisted that if a patent could be taken out for the relative movement of the mold plates, an examination of the prior art will disclose that such relative movement was old, and therefore not patentable. In support of this charge of anticipation the patents of Magers, November 13, 1840; Driver, January 13, 1863; Bill, October 22, 1878; Knight, September 14, 1858; Fuchs, May 22, 1888; and others—are cited.

Taking up the last point first, while the machines covered by these patents, some for molding bullets, some for making crayons, disclose mold plates fitted in a frame, and movable in some way by mechanism for the purpose of discharging the crayon or bullet, not one shows a movement of the mold plates relative to one another in line with the length of the mold; in other words, the movement which the appellees' machine was invented to secure. It may be conceded that mold plates must be moved relative to one another in order to discharge the molded articles. This has been true from the beginning of the art. And long before this invention there were machines in and by which the mold plates were moved in order to discharge the molded article. But this invention was to secure a particular kind of movement of the mold plates, one in the line of the length of the mold, so that the crayon held in one of the

mold plates would, by this movement, be stripped from the other, and then, held in the second, be stripped from the first. None of the patents referred to suggest any such movement, and yet this is the only movement which secures the desired result. The conception of a machine to secure this movement solved the serious problem in the art of crayon making.

Coming now to the more difficult question, we think it must be conceded that the movement of a machine irrespective of the mechanism which causes it cannot be patented. Burr v. Duryee, 1 Wall. 531, 568, et seq, 17 L. Ed. 650, 660, 661; Case v. Brown, 2 Wall. 320, 328, 17 L. Ed. 817; Merrill v. Yeomans, 94 U. S. 568, 573, 24 L. Ed. 235; Wessell v. United Mattress Machinery Co. (opinion of this court just handed down) 139 Fed. 11. The claim must be restricted to the mechanism which causes the movement, subject, of course, to the rule of equivalents, which operates liberally in favor of the grantee where the patent is primary in nature, making a distinct advance in the progress of the art; and this patent, in our opinion, is of that character. When we examine the mechanism, we find in the appellant's machine described in the patent a rocking or tilting device, and in the appellees' a lifting and dropping device. The appliances are essentially different. They do different things in distinct ways. The one rocks or tilts the mold plates, the other alternately lifts and drops them. It is true the tilting motion causes the mold plates to move relative to one another in line with the length of the mold, which is just what the lifting and dropping motion does; but are we justified in holding that these two essentially distinct devices are equivalents, simply because the ultimate result, namely, the movement of the mold plates relative to one another in line with the length of the mold, is the same? We think not, for that would be construing the claim so as to cover the movement alone and not the mechanism producing it. It would be virtually giving a patent for the result, regardless of how reached.

2. Claims 1, 6, and 9 of patent No. 476,038 read as follows:

Claim 1: "In a machine for making crayons, carpenters' chalk, or other like articles, the combination of an upwardly and downwardly movable mold plate having downwardly discharging mold formation with an actuating cam, said cam engaging with said mold plate and thus raising it and then disengaging itself therefrom, substantially as set forth."

Claim 6: "In a machine for the manufacture of crayons, carpenters' chalk, or other like articles, the combination, with a number of cams, the projecting portion of one cam alternating with the depressed portion of the next cam, of a number of mold plates respectively having engagements with said cams, substantially as set forth."

Claim 9: "In a machine for the manufacture of crayons, carpenters' chalk, or other like articles, the combination of a mold plate frame provided on its opposite sides with shoulders, a series of mold plates having their opposite extremities engaging with said shoulders, and two rows of rotary cams respectively engaging with opposite extremeties of said mold plates, the projecting portions of alternate cams of each row being located spirally on a pitch with respect to each other, the projecting portions of companion cams of the two rows being located substantially in the same horizontal plane, substantially as set forth."

These are for the mechanism which alternately lifts and drops the mold plates, and, after stripping the crayons free, jars them out. Of course, the use of a sudden shock or jar to loosen a molded article is old. In the record it appears that the appellant at one time used a machine called the "Waltham machine," in which the mold plates were drawn out by hand, and, being held over a tray, struck with a mallet in order to jar the crayons loose. But the machine covered by this patent, which automatically jars the mold members so as to loosen and discharge the crayons, was both novel and patentable. For the purpose mentioned the appellant used a rotary cam, which alternately lifted and dropped the mold plates. In the specification it was stated that:

"The leading features of this invention comprise mechanism which operates the mold plates in an upward and downward movement, said mold plates having downwardly discharging mold formation, the arrest of such downward movement adapted to cause the loosening or discharge of the crayons and spring mechanism which causes the said mold plates to descend in their said downward movement with speed and force over their gravity tendency, so as to insure certainty in the loosening or discharge of the crayons."

The defendant's machine, as first used, described in patent No. 658,680, granted September 25, 1900, on an application filed March 15, 1900, also used a rotary cam to lift and drop the mold members, but the mold members were arranged in an annular, instead of a rectanguler, frame. Later (whether for the purpose of avoiding a charge of infringement or to improve the machine it is unnecessary to discuss) a rock shaft with a hook was substituted for the rotary cam. In our opinion, the appellees could not avoid the effect of the appellant's patents by arranging the molds in rings instead of rectangles. They used sectional molds just as the appellant, their machine, employing the same actuating cam, moved the mold members relative to one another in the line of the length of the mold, stripping the crayon from the mold members, and by the same sort of a jar, secured by lifting and dropping the mold members, shook the crayons loose. Thus by an immaterial change the appellees sought to secure all the benefit of the appellant's inventions. This could not be done. Even if the arrangement of the molds in rings instead of rectangles was an improvement, the appellees could not obtain the benefit of it without first obtaining the right to use the original inventions. Morley v. Lancaster, 129 U. S. 263, 278, 9 Sup. Ct. 299, 32 L. Ed. 715. Subsequently, instead of using the rotating cam, a rock shaft with a hook was substituted for the purpose of lifting and dropping the mold members and thus jarring the crayons loose. We are satisfied from a careful examination of the lifting mechanism of these two machines that the rock shaft with a hook is no more than a mechanical equivalent for the rotating cam. In one case the rotating cam, engaging with the mold member, lifts it; in the other, the hook attached to the rock shaft, which operates as a cam, engages with the mold member. The similarity of these devices, their essential equivalency, is illustrated in the following cuts. The first may be taken as representing the cam device, the second, the hook device:

In the latter, the projection, H, on the rock shaft, F, indirectly lifts the bracket, D, of the mold member by the use of the hook, K. In the former, the same projection, H, now regarded as a part of a cam, raises the mold member, D, by directly engaging with it.

We have had frequent occasion in this court to pass upon the equivalency of mechanical devices, and we have never held that so slight a change as that indicated above in one of the parts of a machine would deprive its owner of the benefit of his patent. Columbus Watch Co. v. Robbins, 64 Fed. 384, 12 C. C. A. 174; McSherry Mfg. Co. v. Dowagiac Mfg. Co., 101 Fed. 716, 41 C. C. A. 627; McCormick Harvesting Mach. Co. v. Aultman & Co., 69 Fed. 371, 16 C. C. A. 259, 274; Bundy Mfg. Co. v. Detroit Time Register Co., 94 Fed. 524, 36 C. C. A. 375, 391; McSherry Mfg. Co. v. Dowagiac Mfg. Co., 101 Fed. 716, 41 C. C. A. 627, 632; Dowagiac Mfg. Co. v. Superior Drill Co., 115 Fed. 886, 53 C. C. A. 36, 54; Eames v. Worcester Polytechnic Institute, 123 Fed. 67, 60 C. C. A. 37, 43.

These claims are, in our opinion, good, and are all infringed. With respect to them the decree below is reversed, and the case remanded for further proceedings not inconsistent with this opinion. As to claim 2 of patent No. 476,051, the decree is affirmed.