AMERICAN ROLL GOLD LEAF CO. et al. v. W. H. COE MFG. CO. et al.†

(Circuit Court of Appeals, First Circuit. February 10, 1914.)

No. 1002.

1. PATENTS (§ 165*) — CONSTRUCTION — INTERPRETATION OF LANGUAGE OF CLAIMS.

The protection afforded by a patent is specified in the claims, and the public have a right to rely upon the language of the claims in determining how far the patentee's rights go. A patent, like any other grant, is a two-sided instrument, and the intent of the grantor (the public) as to what was covered is as important as that of the grantee.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 241; Dec. Dig. § 165.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
†Rehearing denied June 22, 1914.

2. PATENTS (§ 176*)—CONSTRUCTION — DEFINITION OF TERMS — "AUTOMATI-CALLY."

The word "automatically," as applied to mechanism in a claim of a pat-ent, means self-acting, and implies a certain cycle of movements which the machine itself makes without outside control.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 250⅔–252; Dec. Dig. § 176.*

For other definitions, see Words and Phrases, vol. 1, pp. 649, 650.]

3. PATENTS (§ 328*)—INFRINGEMENT—MACHINE FOR PACKAGING GOLD LEAF.

The Coe patent, No. 580,817, for a machine for packaging decorative films, claims 1 and 4, which respectively include as elements "means for automatically causing the lapping contact" of the films and "means for automatically lapping the films," held not infringed by, a machine in which the movement by which the lapping is effected is performed by hand. Claims 2 and 3, also, held not infringed.

4. PATENTS (§ 22*)—INFRINGEMENT—EQUIVALENT ELEMENTS.

That elements of different machines accomplish the same result is not sufficient to constitute them equivalents, but the means of accomplishment must be themselves substantially the same.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 24; Dec. Dig. § 22.*]

5. PATENTS (§ 328*)—INFRINGEMENT—PACKAGE ROLL OF GOLD LEAF.

The Coe patent, No. 848,883, for a package roll of metallic leaf having its supporting strip provided with a smooth surface at one side and a comparatively rough surface at the other, the purpose being to give the paper strip a surface on one side to which the gold leaf will adhere and on the other side a surface to which it will not adhere, held not infringed by a package roll in which the strip is roughened on one side but is made nonadhesive on the other by the application of a powder.

Appeal from the District Court of the United States for the District of Rhode Island; Arthur L. Brown, Judge.

Suit in equity by the W. H. Coe Manufacturing Company and others against the American Roll Gold Leaf Company and others. De-cree for complainants, and defendants appeal. Reversed.

For opinion below, see 199 Fed. 435.

Frederick P. Fish, of Boston, Mass. (J. Lewis Stackpole, of Boston, Mass., and Horatio E. Bellows, of Providence, R. I., on the brief), for appellants.

William R. Tillinghast, of Providence, R. I. (Herbert A. Rice and Tillinghast & Collins, of Providence, R. I., on the brief), for appel-lees.

Before DODGE, Circuit Judge, and ALDRICH and MORTON, District Judges.

MORTON, District Judge. This is a suit for infringement of let-ters patent No. 580,817, to W. H. Coe, dated April 13, 1897, for a "machine for packaging decorative film," and letters patent No. 848,-883, to W. H. Coe, dated April 2, 1907, for a "package roll of metal-lic leaf." As to each patent, the principal defense is noninfringement. The decree below held that the appellants infringed both patents.

The machine shown in the first of these patents was invented by Coe for making, from sheets of gold leaf contained in a book, a con-

tinuous film supported upon a paper strip, or backing. It is said for the complainants that the patent was a pioneer patent. This is true to the extent that Coe's machine was the first which formed sheets of gold leaf into a continuous film without their being handled by workmen.

The Coe machine is clearly described in the opinion of the learned District Judge. It consists essentially of roller mechanism, which moves forward a paper strip, adhesive on one side and nonadhesive on the other, and table mechanism, which presses a sheet of gold leaf in a book against the under (or adhesive) side of the paper strip, and moves the sheet forward with the strip as the roll turns; the result being that the gold leaf is rolled off the book onto the under side of the paper. After each piece of gold leaf has been thus rolled off, the roll stops, leaving the end of the film in such a position thereon that, when the next sheet of gold is pressed up against the roll and strip, the front end of it will overlap and unite with the end of the previously formed film. It is a property of gold leaf that sheets of it unite readily when pressed together. Joining pieces of gold leaf in this way is called "lapping" them.

The appellants' machine and the Coe machine are substantially equivalent as far as the roller mechanism is concerned; that part of them need not at present be further described. The alleged differences are found in the table mechanism, i. e., the part of the machines upon which the book of gold leaf rests, and by which it is moved.

In the Coe machine, the table moves forward horizontally with the exposed piece of gold leaf until the end thereof is under the end of the film, and then rises vertically, bringing the piece and the film into contact, thereby "lapping" them. At this point, the roll starts to revolve, and the table follows the paper on the roll, continuing pressure against it, until the piece of gold has been rolled off the book. The table then drops vertically a distance sufficient to clear the book from the roll, and returns horizontally to its first position. The whole action of the machine, from the time the table starts until it returns, having completed the operation, is entirely automatic. This automatic operation of the Coe machine is specifically mentioned in two of the claims in suit, which are as follows:

"1. In a machine for winding decorative films into a package roll, the combination with means for drawing the strip forward, of the pressing roller, the table for holding the book of decorative films, and means for automatically causing the lapping contact of the decorative films upon the strip, substantially as described."

"4. In a machine for winding decorative films into a package roll, the combination with the pressing roller, the table for supporting the book of films, and means for automatically lapping the films upon the strip, of the stationary roller, and the movable roller, adapted to hold the winding package in contact with the pressing roller and the stationary roller, substantially as described."

In the appellants' machine, the table, instead of having a solid top, as in Coe's machine, has a longitudinal slide therein which is operated entirely by hand. The operative draws out this slide, places thereon the book of gold leaf having an exposed sheet, and then pushes the

slide forward. This brings the piece of gold leaf in the book under the end of the film on the roll. The appellants' table is pivoted near its center, so that its ends tilt up and down. The front end is tilted down at the time when the slide is pushed forward. The operative now tilts up the front end of the table by hand, thereby bringing the sheet of gold leaf in the book into contact with the film on the roll and lapping the two together. Still holding the front end of the table up against the roll, the operative starts the machine; the roll revolves, carrying forward the table with it, and rolling off the piece of gold from the book. The entire table then drops vertically, and returns horizontally to its first position. The operative pulls back by hand the slide on which the book of gold leaf rests, and uncovers a fresh piece of gold leaf. The cycle above described is then repeated. It will be noticed that the forward movement of the slide which brings the book of gold leaf under the end of the film, and the upward movement of the front end of the table by which the lapping is caused, are both performed by hand, as is the withdrawal of the slide after the automatic cycle has been completed; whereas, in the patentee's machine the entire cycle is performed by the machine itself, without assistance or interference from the operative.

Does this machine of the appellants have "means for automatically causing the lapping contact of the decorative films upon the strip," or "means for automatically lapping the films upon the strip"? The contention of the appellees is that "automatically," in the claims referred to, means that the machine, not the operative, really does the work; that it is not material whether the actuating power is furnished by the operative, or from some other source; that a skillful mechanic could readily organize the appellants' machine to perform a complete cycle of movements under power, without assistance from the operative; that "automatically lapping" means lapping without any handling of the gold by the operative, and refers to the entire operation of positioning the end of the film on the roll, joining the new sheet thereto, and rolling the sheet off the book; that a machine which does this, acts "automatically" within the meaning of the claims of the patent, whether its various movements are produced and controlled by the operative or not.

That there is a difficulty in so construing the word "automatically" is apparent. At the argument, counsel for the appellees contended that "automatically" was to be given the meaning of "mechanically," and in their brief it is said:

· "It is therefore not so much a question of what 'automatically' means as how much and what mechanism is intended to be covered by the last element of these claims." Page 27. "And there is every reason also for giving the word 'automatically' a colloquial meaning, equivalent, if necessary, to 'mechanical,' and not confine it to its strict derivation." Page 32.

[1] Coe's invention was a meritorious one; and his representatives are entitled to a liberal construction of the patent in their favor. At the same time the protection afforded by the patent is specified in the claims. The public have a right to rely upon the language of the claims in determining how far the patentee's rights go. A patent, like

any other grant, is a two-sided instrument, and the intent of the grantor (the public) as to what was covered is as important as that of the grantee.

. "The object of the patent law in requiring the patentee to 'particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery' is not only to secure to him all to which he is entitled, but to apprise the public of what is still open to them. The claim is the measure of his right to relief." McClain v. Ortmayer, 141 U. S. 419, 424, 12 Sup. Ct. 76, 77 (35 L. Ed. 800).

[2, 3] The word "automatically," as applied to mechanism, is in common use and is unambiguous. It means "self-acting," and it implies a certain cycle of movements which the machine itself makes without outside control. This cycle may be simple or complex. In the development of many machines there can be traced a constantly increasing extent of automatism; by which is meant that many steps or processes, which formerly had to be started, stopped, or controlled by the operative, are now started, stopped, or controlled by the machine itself. When the valves of the steam engine, which were at first operated by hand, were connected to and operated by the engine itself, the valves became automatic. We think that the words "means for automatically causing the lapping contact," and "means for automatically lapping the films," imply a cycle of movements made by the machine without outside interference, which cause the lapping contact, or which do the lapping. Gould Coupler Co. v. Trojan Car Coupler Co., 74 Fed. 794, 21 C. C. A. 97; King Philip's Mills v. Kip-Armstrong Co., 132 Fed. 975, 66 C. C. A. 45.

This view is strongly supported by the proceedings in the Patent Office. The seventh claim there presented by the applicant was for substantially the same combination as is covered by the first claim of the patent, except that "the movable bed for carrying the table" was inserted as an additional element, and, instead of "means for automatically causing the lapping contact," etc. (claim 1), the seventh claim had "means for causing the timely elevation of the table to lap the films upon the strip, etc." We think this seventh claim as applied to Coe's machine was intended to cover, and did cover, substantially the same combination as the first claim without the element of automatism, i. e., that it covered "mechanical" lapping by roller and table mechanism, as distinguished from "automatic" lapping. On objection by the Patent Office, it was canceled by the applicant. We do not think that Claim 1 ought now to be so construed, at great violence to its language, as to cover what was included in the abandoned claim. A suit for infringement is not a reissue proceeding. Moreover, if claim 1 were so broadened as to include as its last element all mechanical means for completing the operation of the machine, it would, we think, be essentially functional rather than descriptive.

"To say that the patentee of a pioneer invention for a new mechanism is entitled to every mechanical device which produces the same result is to hold, in other language, that he is entitled to patent his function. Mere variations of form may be disregarded, but the substance of the invention must be there." Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, 18 Sup. Ct. 707, 42 L. Ed. 1136.

The fourth claim is said by the complainants to be "very similar" to the first, and to "cover the same mechanism," though certain of its elements are differently described. These statements are clearly correct, and render separate discussion of the fourth claim unnecessary.

As to claims 2 and 3 of the first patent, which are as follows:

"2. In a machine for winding decorative films into a package roll, the combination with means for winding up the strip and film in a package roll, of a bar of wax or other suitable material, in contact with which the strip is drawn, to receive a coating adapted to secure the proper adhesion of the film to the strip, and means for applying the film to the strip, substantially as described.

"3. In a machine for winding decorative films into a package roll, the combination with means for drawing the strip forward, of a pad for spreading the powder upon one side of the strip, and a bar of wax or other suitable material, in contact with which the strip is drawn to receive a coating upon the opposite side of the strip, which is adapted to secure the proper adhesion of the decorative film thereto, substantially as described."

These claims are not limited to machines for forming metallic films into strips, which was Coe's important invention. They relate to "machines for winding decorative films into a package roll." The prior art shows several machines which come close to the combinations specified in these claims. Each of the claims includes as one element "a bar of wax or other suitable material in contact with which the strip is drawn to receive a coating" adapted to secure the proper adhesion of the film to the strip.

The appellants contend: (1) That they do not infringe these claims; and (2) that said claims are void for lack of novelty.

As to 1, the appellants' machine does not contain any "bar of wax," or any other arrangement for "coating" the strip of paper for the purpose of making it adhesive. It does have, in substantially the same place as the wax roll, a revolving round brush of wire which brushes against the surface of the strip to which the gold is to be attached. The function of the brush was not satisfactorily explained by the appellant. Presumably it serves some purpose; it probably roughens that side of the paper, and perhaps also removes accidental dust or powder.

[4] It was necessary that one side of the strip should be more adhesive to the gold than the other side, in order that the film might unroll without tearing. Coe secured this result by applying an adhesive coating on one side, and powder (which is a nonadhesive) on the other side. Gold leaf adheres better to a rough surface than to a smooth one. Roughening the surface of the paper by the brush in the appellants' machine serves the same purpose as coating it with wax in the complainant's, i. e., makes it more adhesive to the gold leaf. The wax cylinder and the wire brush, therefore, accomplish the same result, but in essentially different ways. The appellees contend that this identity of result is sufficient to constitute the wire brush an equivalent of the bar of wax and adhesive coating of the claims under discussion. But we think mere identity of result is not sufficient. There must be the employment of "substantially the same means to accomplish the same result." Machine Co. v. Lancaster, 129 U. S. 263, 290, 9 Sup. Ct. 299, 32 L. Ed. 715. This is especially

true where, as here, of several methods by which the result may be secured, the claim specifically describes one. As Judge Colt said in the Edison Light Case:

"If the claim had been limited to conductors of platinum wire, as the filament is limited to carbon, the case might be different." Edison Electric Light Co. v. Boston Incandescent Lamp Co. (C. C.) 62 Fed. 398.

"On the other hand, it is true that words and phrases which might have been omitted on the presumption that they relate to nonessentials may be introduced in such direct and positive manner as to leave the courts no option except to regard them as affecting the objects and limitations of the instrument in question." Putnam, J., Reece Button-Hole Machine Co. v. Globe Button-Hole Machine Co., 61 Fed. 958, 961, 10 C. C. A. 194.

Granting that the patentee is entitled to a liberal interpretation of the rule as to equivalents, we do not think that the wire brush of the appellants is the equivalent of the "bar of wax" and the "coating" specified in these claims. We therefore, without deciding the question as to validity, hold them not infringed. Westinghouse v. Boyden Co., ubi supra; American Crayon Co. v. Sexton, 139 Fed. 564, 71 C. C. A. 548.

[5] As to the second patent, No. 848,883: This patent is for a package roll of metallic leaf. The contention of the complainants is that the roll of paper and film produced by the appellants' machine is covered by the single claim of this patent, which is as follows:

"A package roll of metallic leaf having its supporting strip provided with a smooth surface at one side, and a comparatively rough surface at the other, whereby the metallic leaf may be suitably held for delivery upon unwinding the roll."

The prior art shows many different patents for rolled and flat packages of paper and gold leaf. The problem was to give one side of the paper a surface to which the gold would adhere, and the other side a surface to which the gold would not adhere; it was also necessary that the adhesive side should not cling to the gold so strongly as to prevent it from being readily removed therefrom. The purpose of the patent is, as therein stated, "to dispense with the use of both adhesive and non-adhesive materials in connection with the supporting strip of a package roll," and to avoid "the troublesome employment of wax or powder." This is accomplished by making one surface of the paper rough and the other surface smooth, and taking advantage of the "natural tendency of metallic leaf to cling to the rough side and leave the smooth side" of the paper strip. Considering the claim of the patent in the light of the specifications and of the prior art, it is clear that it was intended to cover a package roll in which the surfaces of the paper are such that neither an adhesive substance nor powder is necessary. The appellants unquestionably make use of a rough surface on the paper to cause the gold to adhere thereto; there is no evidence that they use the smooth surface to make the paper nonadherent. It is undisputed that the appellants use powder to secure nonadhesion, and it does not appear that the use of such power is unnecessary. Assuming that the patent is valid, it is not entitled to a construction which shall include the appellants' roll, but is

limited to rolls in which neither adhesive nor powder is necessary, and is not infringed by the appellants' roll.

The decree of the District Court is reversed, and the case is remanded to that court, with directions to enter a decree dismissing the bill, with costs; and the appellants recover costs of appeal.