## AUTO HONE CO., Inc., et al. v. HALL CYLINDER HONE CO.

(District Court, N. D. Ohio, W. D.   May 22, 1924.)

No. 434.

**1. Patents &lowast;178—Not entitled to construction broad enough to cover all means of accomplishing same result.**

Even a pioneer patent is not entitled to a construction broad enough to cover any and all means of accomplishing the same result.

**2. Patents &lowast;328—1,193,884, claim 5, for portable grinder for truing up cylinders, held void, as merely functional.**

Emery and Bray patent, No. 1,193,884, claim 5, for a portable grinder for truing up cylinders, *held* void, as merely functional.

**3. Patents &lowast;328—1,193,884, claim 6, for portable grinder for truing up cylinders, held valid, but not infringed.**

Emery and Bray patent, 1,193,884, claim 6, for portable grinder for truing up cylinders, *held* valid, but not infringed.

**4. Patents &lowast;245—Interchangeability of parts standard test of infringement, lacking which presumption is against infringement.**

Interchangeability of parts is a standard test of infringement, and when the parts are not interchangeable, the presumption against infringement is strong.

In Equity. Patent infringement suit by the Auto Hone Company, Inc., and others, against the Hall Cylinder Hone Company. Bill dismissed.

Emery, Booth, Janney & Varney, of Boston, Mass. (Everett S. Emery, of Boston, Mass., of counsel), for plaintiffs.

Owen, Owen & Crampton, of Toledo, Ohio (Charles W. Owen, of Toledo, Ohio, of counsel), for defendant.

WESTENHAVER, District Judge. This is the usual patent infringement suit. It is based on United States letters patent No. 1,193,884, issued to Victor J. Emery and Mellen N. Bray, August 8, 1916. Claims 5 and 6 only are in issue. The defense is noninfringement. The validity generally of the patent is not challenged, but it is urged that claim 5, if given the broad construction for which plaintiff contends, is void as functional.

The device in question is a portable grinder, primarily used in truing up out-of-round cylinders, particularly automobile cylinders. It is operated with a portable electric drill. In the summer of 1922 defendant's president, E. A. Hall, acquired from the Auto Hone Company, under a tentative agency contract, a grinder then being made by it, and, finding, as he asserts, that it was defective, designed the present device said to infringe. Complaint is also made that defendant has appropriated some advertising cuts and matter furnished to Hall in that connection. At that time, and not until after the present dispute had begun, had either party any knowledge of the Emery and Bray patent or device, which had never been marketed, and the commercial use of which had ceased in 1921. The Auto Hone Company, after notifying the defendant of the alleged infringement, acquired in April, 1923, the Emery and Bray patent, and brings this suit thereon. These cross-complaints of inequitable conduct are immaterial. In its controlling aspects, the issue is one of infringement or noninfringement, and this issue involves a comparison of the elements of the two devices and their functions and principles of operation.

Emery is the inventor of the grinder for which the patent issued. The object of the invention is stated therein to provide "an improved device for grinding or lapping various materials." Emery in 1915, when he made his invention, was a maker and repairer of marine engines, and devised it primarily for use in grinding the interior of marine engine cylinders. It is proved that his grinder was capable of use and actually used in grinding and truing up out-of-round automobile engine cylinders. In grinding marine or automobile engine cylinders, it was necessary to place the cylinder upon the bed of a drill press and connect the shaft or

spindle of the grinder with the drill press spindle or arm. It is so required, not merely to furnish an operating mechanism and power, but to center the grinder with the cylinder, although the evidence shows that centering might also be had by an extension of the grinder shaft.

Figure 3 of the patent and Plaintiff's Exhibits 21 and 22 best disclose the features of Emery's invention. It has a shaft or spindle adapted to be driven by any suitable means. At the lower end of this shaft, a spider or head is mounted, the head being grooved to receive four arms, although the evidence shows that a three, and even a two, arm grinder had been made and used by Emery, which arm is pivoted at one end. In the other end is a recess to receive a grinding stone, usually a block of carborundum or like abrasive substance. These pivoted arms, with their grinding stones, are designed and mounted to swing in a plane transverse to the shaft as the shaft revolves. Spiral tension springs are interposed between the shaft and each arm to force the grinding stone outwardly and hold it in contact with the cylinder wall, thus supplementing the centrifugal force resulting merely from a rapid revolution of the grinder. These elements of the device are old in the art.

The new elements pertain to its remaining features, now to be described. A collar is mounted on the shaft above the pivoted arms, from which project four or any desired number of lugs. Upon these lugs are pivoted detents or levers, one end of which enters a recess in each pivoted arm, and the other rests upon or in proximity to a screwthreaded cone or wedge member. This wedge cone is screwed upon the shaft, and limits or adjustably controls the distance to which the spring tension may expand outwardly the pivoted arms. By screwing the cone downwardly towards the grinder, the outward throw or range in operation of the arms is rigidly limited. It likewise thus limits or controls the expansive effect of the tension springs. By screwing the wedge cone in the opposite direction, the outward throw or range of the arms is correspondingly enlarged.

The novel result thus accomplished is the rigid limitation upon the effective grinding operation and the ability to predetermine and readjust this limit. When one end of the levers rests upon the wedge or cone, the combined spring tension and centrifugal force are overcome, and no grinding there-after takes place. This limit may be determined before the grinding begins, so that the abrading members will cease to grind at the low spots when that limit is reached, while continuing to grind at the high spots until a perfectly round cylinder is made. In addition thereto, the wedge cone may be adjusted as often as is necessary, so that a minimum amount of material is removed in getting the desired result. It is asserted, and I think correctly, that with the Emery device it was possible to work to an extremely high degree of accuracy, as close as fourtenths of one-thousandth of an inch. It should be noted that, while witnesses speak of oval, or tapered, or out-of-round cylinders, these terms are relative, and should be thought of in terms of the thousandth part of an inch. Emery speaks of cylinders worn to an oval shape as much as .015 or .018 of an inch as a rather extreme case.

Defendant's device is called a hone, but uses abrading members of the same material as Emery. For present purposes I shall refer to its third form, illustrated by Plaintiff's Exhibits 23 and 26 and Defendant's Exhibit C. It has a hollow, elongated body, which also serves generally as an operating shaft or spindle. This hollow shaft has hinged thereto four swinging arms, about 8 inches in length, spaced about the shaft, so that each pair of two are always directly opposite each other. These arms swing parallel to the axis of the hollow shaft, like hinged doors. Except as they are hinged at both ends, and are four to six times the length of the arms of Emery's device, they operate as holding members for abrading stones, and are pivotally mounted in substantially the same manner as in Emery. They also swing in a plane transversely to the shaft and radially distant therefrom. Each arm does not have a separate coiled tension spring interposed between the same and the shaft, to supplement and reinforce the centrifugal action. There is, however, a coiled tension spring interposed in the hollow shaft between an adjusting nut at the top and a plunger at the bottom. The lower end of the plunger is conical in form and presses against four dogs or levers. Each of these dogs is interposed against the inner side of the holder arms, and is pivoted at its other end to the shaft body. In defendant's third form, or eight-dog hone, this plunger has an extension, with a conical lower end to operate another set of four dogs. While the elements thus described differ in form and are differently organized from Emery, they

function in substantially the same way and accomplish substantially the same result.

The levers and wedge-shaped cone of the Emery device are eliminated. Defendant has no levers or the equivalent thereof which limit the outward throw or range of the arms or holders. It has no cone or other means which enable radial adjustments to be made from time to time of the arms, or limit the swing thereof beyond which the grinders can no longer work. It is upon the elimination of the levers and wedge that defendant relies primarily to differentiate its device from Emery. As a result of such elimination, defendant claims that neither Emery's principle of operation, nor his mechanical means, or the substantial equivalent thereof, are to be found in its device.

There are substantial differences in the principle of operation, as well as in the means by which results more or less similar are obtained. In Emery, each abrading arm grinds with the full combined centrifugal and spring pressure forces at all points equally, until the predetermined outer grinding limit is reached. When this limit is reached, all grinding is positively stopped. This result is effected by the levers and the wedge cone. The control especially stressed in the Emery patent, and in argument, means nothing more in fact than determining or reaching this limit. The radial adjustment of the abrading arms means nothing more than manipulating the cone so that the levers will come to rest thereon when this predetermined limit is reached.

In defendant's device there is no such limiting or controlling means, and no such adjusting means. Nor, in my opinion, is there any substantial mechanical equivalent. The grinding limit is not controlled, but must be left to the judgment of the operator. The throw or swing of the arms is limited only by the cylinder wall. The grinding action, due to the combined spring pressure and centrifugal force, continues as long as the tool is in operation. The operator must stop grinding and withdraw the tool, and use a michrometer from time to time, to determine the stages of the truing-up process.

I am not overlooking plaintiff's contention that the shoulders (S, Defendant's Exhibit C) serve to limit or control the final outward throw or grinding limit. Several reasons exist why this is not true, and why such shoulders are not the equivalent of the levers and wedge cone of Emery. In the first place, grinding by centrifugal force would still continue after the conical lower

3 F.(2d)—31

end of the plunger came to rest on these shoulders. In the second place, these shoulders are designed to prevent the dogs from riding up onto the cylindrical body of the plunger, and thereby making it difficult, if not impossible, to compress the arms, so that the tool can be inserted in a cylinder. In addition thereto, the evidence is clear that in actual grinding operation the plunger is not designed to come to rest upon these shoulders, and does not in fact do so.

Nor am I overlooking the plaintiff's further contention that grinding action is limited and controlled at the major axis of the cylinder by automatic action, due to compression upwardly of the tension springs whenever two diametrically opposed abrading members pass the minor diameter. This result does in fact take place, thereby reducing the grinding action at the major diameter to centrifugal force only. But the means whereby this is accomplished are wholly different from Emery; in fact, no means are present in Emery whereby this result is accomplished. It is a principle of operation peculiar to defendant's device, and not present in Emery. A limited automatic control of the maximum grinding effect is thereby obtained, but it is one which Emery does not attain, and is wholly different from anything which takes place in his grinder.

Moreover, defendant's device is self-centering in the cylinder. This is due to the greater length of the holder arm and the extension of the plunger, with its extra set of dogs. This makes defendant's tool practicable in the hands of a relatively unskilled garage mechanic, and permits its operation by a portable electric drill. In Emery's device, some exterior self-centering operation or means is required, either by means of the drill press spindle or an extension of the grinder shaft engaging a bushing. Plaintiff's contention that Emery's holder arms might likewise be prolonged, and the levers made to enter recesses at one end thereof, has been considered. I am convinced that the spring inherent in a tool constructed as lightly as it is necessary to construct these devices to make them commercial would render that form of construction for Emery inoperative in work requiring accuracy to the thousandth part of an inch.

The foregoing summarizes the important differences in the elements and principles of operation of the two devices. Claims 5 and 6 in issue read as follows:

"5. A grinder comprising in combination a shaft, holders rotatable therewith and

mounted tó swing in a plane transverse thereto, abrading members carried by said holders, and means to control the swinging there.

"6. A grinder comprising in combination a shaft, abrading members rotatable about the axis thereof and radially distant therefrom, levers, the position of which controls the radial distance, and means for simultaneously and uniformly adjusting said levers."

Plaintiff asserts that claim 5 is specific as to the feature of the swinging holders for abrading members, and is generic as to means for controlling the swinging of such holders, and that claim 6 is generic as to the mounting for the abrading blocks, and is specific as to the group lever type of means for controlling the swinging movements. It asks for those claims the range of equivalents due to a pioneer or primary invention. In argument it is said: "He appears to have been the first to present a grinder that could be placed in an out-of-round cylinder and rotated and traversed therein, to remove by a continuous automatic action the high spots from the cylinder wall without grinding and enlarging the low spots, until a truly cylindrical bore had been produced."

[1] Even so, the question is one of equivalency in means and in function. A construction is not accorded even a pioneer patent broad enough to cover any and all means of accomplishing the same result. The novel elements, or the gist of Emery's invention, reside in the control or limiting levers and the adjusting wedge cone. All other elements of his combination are found in the prior art. In Gooden, 109,610, we have, as in claim 5, in combination, a shaft, holders rotatable therewith and about the axis thereof and radially distant therefrom, with means for simultaneously and uniformly adjusting the same. In Forsyth, 595,159, we have the shaft, holders rotatable therewith, pivotally mounted, and means to limit if not to control the distance of their swinging. In Roth, 656,664, we have the shaft, holders rotatable therewith and about the axis thereof and radially distant therefrom, and, in addition, separate springs interposed behind each abrading member to reinforce the centrifugal pressure, and means for limiting, if not controlling, the swinging of the holder arms.

[2] As to claim 5, it follows that the gist of Emery's invention resides in the words "means to control the swinging thereof." If this claim can be construed in the light of the specifications to be means substantially as described, then defendant's device does not embody those means, nor the substantial equivalent thereof. If, on the other hand, in the light of more specific claims in the patent, Emery was intending by claim 5 to cover any and all means whereby the swinging thereof could be limited or controlled, or the function or result of truing up an out-of-round cylinder could be accomplished, then the claim is functional, and must be held to be void, on the authority of the following cases: American Crayon Co. v. Sexton (6 C. C. A.) 139 F. 564, 566, 71 C. C. A. 548; Davis Sewing Mach. Co. v. New Departure Mfg. Co. (6 C. C. A.) 217 F. 775, 782, 133 C. C. A. 505; Jones v. General Fireproofing Co. (6 C. C. A.) 254 F. 97, 165 C. C. A. 507; Heidbrink v. McKesson (6 C. C. A.) 290 F. 665, 668; O'Reilly v. Morse, 15 How. 62, 112, 14 L. Ed. 601; Risdon v. Medart, 158 U. S. 68, 77, 15 S. Ct. 745, 39 L. Ed. 899; Westinghouse v. Boyden, 170 U. S. 537, 558, 18 S. Ct. 707, 42 L. Ed. 1136. In my opinion, claim 5 cannot be sustained by so limiting it, but should be held void because merely functional. In reaching this conclusion, I have not overlooked Paper Bag Patent Case, 210 U. S. 405, 421, 28 S. Ct. 748, 52 L. Ed. 1122, but am of opinion that the present case is governed, not by it, but by the first-cited group of cases.

[3, 4] Claim 6, is, in my opinion, valid, but not infringed. Emery is not entitled to claim any and all means of mounting abrading members, so as to make them rotatable about the axis of the shaft and radially distant therefrom, but merely the means disclosed in his patent, or the substantial equivalent thereof. The omission from defendant's device of the control levers and wedge cone, the position of which limits or controls the swinging of the arms, and permits the adjustment and readjustment of the radial distance of such arms from the shaft, without the substitution therefor of any substantial equivalent, precludes infringement. Moreover, there is an entire lack of interchangeability between the novel elements of the two devices. Emery's would be inoperative without the levers and adjusting cone. Defendant's device would be inoperative with them. Interchangeability of parts is a standard test of infringement, and, when not interchangeable, the presumption against infringement is strong. See Miller v. Eagle Mfg. Co., 151 U. S. 186, 208, 14 S. Ct. 310, 38 L. Ed. 121; Pittsburgh Meter Co. v.

Pittsburgh Supply Co. (3 C. C. A.) 109 F. 644, 48 C. C. A. 580.

My conclusion is that claim 5 is invalid, and that claim 6 is not infringed. The bill will be dismissed, at plaintiff's cost.