## WORTHINGTON PUMP & MACHINERY CORPORATION v. CLARK BROS. CO.

(District Court, W. D. New York. January 10, 1927.)

1. Patents ⬤➾328—Meyer reissue, 13,991, for plate valve held valid and infringed.

The Meyer reissue patent, No. 13,991 (original No. 1,019,683), for plate valve for compressors, *held* issued on timely application under the circumstances shown, not anticipated nor limited by prior patents, and to disclose invention, claim 3 also *held* infringed.

2. Patents ⬤➾18—An improvement may be patentable, though simple and seemingly obvious after its disclosure.

That an improvement which renders a device operative is simple and seems obvious does not evidence want of novelty or invention, where the obviousness comes after others, skilled in the art, had failed to devise something better than was known.

3. Patents ⬤➾36(2)—That prior patents for similar devices were long unused is evidence of the value of a later invention, which is accepted and goes into general use.

That prior patents had been in existence and unused for 20 years is pregnant evidence of the value of a later invention, which is operative and goes into general use.

4. Patents ⬤➾328—1,341,145, for improvement in plate valves, held valid, and claims 1, 4, and 6 infringed.

The Meyer patent, No. 1,341,145, for improvements in plate valves, *held* valid, and claims 1, 4, and 6 infringed.

In Equity. Suit by the Worthington, Pump & Machinery Corporation against the Clark Bros. Company. Decree for complainant.

Philipp, Sawyer, Rice & Kennedy, of New York City, and Donald Bain, of Buffalo, N. Y. (C. J. Sawyer and James Q. Rice, both of New York City, of counsel), for plaintiff.

Davis & Simms, of Rochester, N. Y., for defendant.

HAZEL, District Judge. This is a suit in equity for alleged infringement of the reissue patent, No. 13,991, of October 12, 1915, granted to Robert Meyer, and patent No. 1,341,145 of May 25, 1920, to the same inventor as assignor, both patents relating to plate valves which are utilized in machinery for compressed air and gases. Compressors of this type are largely used in manufacturing plants for driving machinery of various sizes; also for driving natural gas through pipes, supplying air to blast furnaces, and, in small sizes, they are used for inflating automobile tires, or drilling or riveting in building operations. They are provided with machinery for driving a piston in a cylinder which, of necessity, has intake and discharge valves and a discharge pipe leading to a storage reservoir, from which the compressing medium flows to operate the particular apparatus.

The valves used for this purpose, especially the discharge valve, in order to operate the machinery efficiently, are required to open rapidly and widely, and to close as tightly and rapidly as possible. Movements of the valve plates must be practically instantaneous upon the completion of the piston stroke, which travels at very high speed, and valves that are leaky or sluggish in operation must be avoided to maintain the desired working capacity. Moreover, it is important that compressor valves should function with as little noise as possible to prevent wear and breakage by their fluttering action and stoppage of a single valve, when a plurality are in use in a single case or compressor.

[1] The reissue patent must be discussed first, to completely understand both inventions. The specifications of the reissue, admitting that automatic plate valves were known in the art, states that the plates in the known type were firmly clamped at one end, while at its other end it was free to allow an upward bend. Such an arrangement, it is shown, subjected both ends of the plate to bending stresses, due to axial compression, which impaired the durability of the plate and often caused the fixed end to fracture.

The objects of the patentee were to remove the indicated defects and eliminate excessive, lateral, and transverse stresses without "departing from the normal bending line"; to simplify construction, secure durability, and desired freedom at both ends of the plate; to "permit a uniform bending line in opening," and constrain the ends of the cap to prevent valve displacement. To accomplish these objects, the plate valve is made light of weight, has neither holes nor slots, and the flexible plate easily bends upwards from its end supports or seat for a determined space by the air pressure, and, in operation, as the proofs show, establishes a uniform slot or opening without bending at the sides or undue stresses or strains. The ends of the plate are made to extend over a long, narrow strip seat, which has recesses at the ends, and when the air pressure is applied the plate arches, while the recesses operate to restrain or control the upward movement and permit bowing or bending slightly to function as a valve opening. It was evidenced that, prior to the adoption of the Meyer valve, both plaintiff and defendant, in their compressors, used poppet dis-

charge and suction valves, and that the plate valves in issue have largely displaced the older type, and have received the approval of engineers skilled in the art.

The validity of the reissue is attacked, the contention being that in the original application the patentee, in claim 1, broadly covered the valve plate in question and its mode of operation, expressed as "like a loaded elastic rod resting on two supports"—a claim that was rejected by the Patent Office on the British patent to Alley (to which reference is hereinafter made), followed by cancellation and a substitution of three other claims. But I find that the canceled claim was not of like scope. It did not broadly cover the essential elements of the reissued claim 3, as a close reading of both claims, which are printed in parallel columns, shows:

| Canceled Claim 1. | Reissue Claim 3. |
| --- | --- |
| 1. An automatic plate valve of the type described, comprising in combination a valve seat, an elastic thin plate or strip *resting on two parts thereof,* and a cap or arrester *having a recess of arc-shaped section* holding the plate or strip on the valve seat and *exactly* determining the upward movement of the same, *whereby when the plate or strip is moved upwards by a fluid it behaves like a loaded, elastic rod, resting on two supports.* | 3. An automatic plate valve of the type described, comprising in combination a valve seat, a thin elastic plate or strip, forming a valve, and *having both ends free to permit bending of the plate on a uniform bending line in opening,* and a cap or arrester holding the plate on the valve seat and determining the opening movement of the same. |

It will be perceived that, in claim 1 of the original patent, the "elastic thin plate or strip" is resting on two parts of the valve seat, and the original specification describes its resting upon the entire valve seat to close the openings or ports. Claim 3 omits this description, claimed to be incorrect, and specifically includes as an element the plate, with both ends free, so as to permit bending on a uniform bending line. The canceled claim also states that the cap or arrester is provided with a recess or are-shaped section, which is limited to determine the upward movement of the plate. This limitation was not required by the description of the invention, and claim 3 of the reissue omits it. The phrase relating to the plate in operation behaving "like a loaded, elastic red, resting on two supports," was not approved by the Patent Office, since it was applicable to different types of valve plates—one type being shown in the prior Alley patent. This phrase also was omitted from the reissue. Furthermore, the words

"resting on two parts thereof," in the canceled claim, suggested the Alley valve, which describes the ends of the plate as resting on the valve seat. The reissue, I think, more clearly accords with the intention of the patentee, and claim 3 is correspondingly of broader scope than the original patent.

The patentee was not estopped, by the cancellation of the original clause, to apply for a reissue, since no enlargement or expansion resulted. What is therein included could have been included originally, despite the words of limitation or reference to known types of plate valves. It is true that a patentee cannot, by reissuing a claim, cover any and all means of accomplishing the same result, as ruled in Auto-Hone Co., Inc., v. Hall Cylinder Home Co. (D. C.) 3 F.(2d) 479, and other adjudications, but the patentee did not seek to do so. His specific omissions from the original patent did not destroy his right to avail himself of the reissue statute, since his original adaptation had not developed to the disadvantage of others engaged in manufacturing valves of the specified type. Although his application for reissue was made after the expiration of two years from the original grant, the delay has been fairly explained and excused.

It is shown that patent No. 1,019,683 (original) was granted March 5, 1912, and reissue was applied for 3½ years later; that the assignor of the patent was a German citizen, and presumably was unfamiliar with our patent laws. In good faith, he believed, presumably, that his invention was accurately described and claimed as to its scope. Negotiations for the purchase and assignment of the original patent began at about the commencement of the World War, and, on account of the war, were unavoidably delayed until February, 1915, when the assignment was made, and the reissue application was filed shortly afterwards. In view of the circumstances, section 4916 of the Revised Statutes (Comp. St. § 9461), and the rule relating to applications for reissue within two years after the original grant, have not been disregarded. Baldwin v. Abercrombie (D. C.) 227 F. 455; Abercrombie v. Baldwin, 245 U. S. 198, 38 S. Ct. 104, 62 L. Ed. 240.

It is next contended that the prior British patent to Lindeman, No. 18,176, dated August 22, 1903, discloses every essential feature of the reissue. Lindeman utilized a rigid and unyielding strip of metal, which normally rested against the valve seat; the ends, however, were perforated and loosely surrounded two bolts, on which the valve plate moved, without bending, except that it was free to

rock at a spring arm extension, which is removed from its rigid part. The valve, though using a strip of metal, was not of the type of the flexible valve strip in suit. In service it rose and lowered from the valve seat, without bowing or bending at the valve part, to open and close the port; its yielding part of the strip serving, as Expert Waterman testified, as tethering strips for the perforation at the ends. The description supports this view, viz. that the flat valve was made to rise and fall, but not to bend to and from the valve port, which it was designed to close, as does the reissue in suit; and besides the movement of the valve was controlled by the bolted spring arm arrangement extending from the central part of the valve (Figs. 4–8), and which operate at the ends, holding the plate loosely on the part upon which the port opening was placed. It is clear to me that this device did not operate in the manner described in the patents in suit, and has no particular bearing upon the questions of invalidity or noninfringement, or limitation of claim 3.

Defendant's expert, Dorsey, thought that the Alley disclosure was the closest approach to the reissue, and in this estimate I think he was correct. But it is nevertheless differentiable. It was devices of this type that the patentee, no doubt, designed to improve, and succeeded in improving in a patent sense. There is nothing to show that Alley's structure was commercially used or sold. It need not be discussed further than to point out that, though its valve plate rises and bends on compression of the air, yet at one end it is held closed by a bolt and nut, or clamp, which holds the strip by one end near the edge of the valve port, between the top plate and the lower plate, as shown in Fig. 4 of the drawing. In the valve movement there is, I am convinced, a lateral bending strain extending across the valve strip, which would cause fracture to the strip, and especially at the point where it is made fast. Neither the valve of the reissue, nor defendant's, are subject to such strains and stresses. The citation does not, in my opinion, serve to limit the scope of the patent under consideration. Nor is anything discovered in the prior Mansfield patent to anticipate or to limit it. The patentee, Meyer, adopted a new and novel principle, which advanced the art and introduced a new result.

[2, 3] All the cited prior patents have been examined by me, but I remain of opinion that invention is disclosed, and that the claim of the reissue in controversy does not require limitation to the precise method by which the plate is bent on a uniform bending line in opening. The improvement may have been simple, and now obvious, but the apparent obviousness comes after failure, by others skilled in the art, to devise something better than was known. Schenck v. Singer Mfg. Co. (C. C. A.) 77 F. 841. The operativeness of the valves under the Lindeman, Alley, and Mansfield patents is questionable. It was not shown that the use of a thin, metal strip as a compressor valve operated either successfully or economically. The fact that the prior patents mentioned were granted 20 years ago may be regarded as persuasively corroboratory of their failure to function successfully. This alone would be "pregnant evidence of the novelty, value, and usefulness" of the reissue. Magowan v. New York Belting & Packing Co., 141 U. S. 332, 343, 12 S. Ct. 71, 76 (35 L. Ed. 781).

[4] I now come to consider the second Meyer patent, No. 1,341,145, which describes a valve of similar construction as that of the reissue, wherein, however, the valve seat is flat and has no recesses; the bending of the valve occurring from the ends of the strip. There are recesses in the cap at the ends, to impart constraint to the valve movements, while, as shown in the reissue, there were recesses located in the valve seat, which caused the valve to bend at points in its length. The recesses in the cap permit the valve, from both ends, to move slidingly towards one another, to bow or curve on a uniform bending line, except in certain instances, when variations in fluid resistance move the valve from one end only. The valve plate is supported and controlled or constrained at its extreme ends, but such constraining does not interfere with its desired free bend. According to the evidence, less tooling and machining is required in its construction than was required in making the earlier valve structure. And, furthermore, chattering or slapping of the valves in operation, which developed in the reissue, is avoided, and the port area increased. In these respects the patentee specifically improved his earlier device. The claims relied on are 1, 4, and 6, which read as follows:

"1. The combination of a valve seat having one or more ports, one or more thin elastic plates forming valves and having both ends free to permit bending of the entire valve in opening, and a cap provided with means at opposite ends of the valve for holding the valve in position and permitting the bending movement, said valve seat being formed without recesses for the valve."

"4. A valve seat having a plain surface, an elongated valve of elastic flexible material, and a cap having a concave recess, the said

valve extending across the concave recess and at both ends loosely received between the ends of said recess and said seat."

"6. A valve seat having a plain surface with one or more ports, one or more thin elastic plates forming valves and having both ends free to permit bending of the entire valve in opening, and means at opposite ends of the valve for holding the valve in position and permitting the bending movement."

Claim 1, it will be observed, includes a valve seat having one or more ports, one or more plates with both ends free to permit bending of the entire valve opening, and a cap with means at the ends of the valve to hold the valve in place. Claim 4 specifies a valve seat of plain surface and an elongated valve strip, and a cap with a concave recess —the valve extending across the recess with both ends loose to constrain valve movement —while in claim 6, the free ends of the plates, to make bending of the entire valve opening, is particularized with means for holding it in position.

These improvements are not covered in the original or the reissue by implication, as defendant's expert testified, and, in my opinion, it required invention to make them. In efficiently using a plurality of valves, a certain amount of space is required to obtain increased port area, and by constraining the valves, by contact with the walls of the recesses, such additional space was provided. The witness Waterman expressed the opinion that it was essential to successful operation that the ends of the valve should be constrained and allowed to rub on their corners, as he put it, to secure a maximum valve length, and he said:

"In the first patent Meyer had a quite ideally perfect arrangement, in that the rubbing part was some distance back from the end, and there was no possibility of any gouging; but it was less advantageous than he desired, because it consumed a large amount of space. In order to overcome that difficulty, what he did was not to further contract and throw away more space, but what he did was to build a valve port of much greater length, and so modify the entire construction, both at the seat and at the cap, that he could utilize a much greater proportion of the length of the valve for working port area."

Testifying further, he said that, in the first Meyer patent, the effective area, allowing air to pass, was between one-half and two-thirds less, and, in the patent now considered, the effective port area available is between 80 per cent. and 90 per cent. Mr. Dorsey,

however, did not agree, and expressed the opinion that it was a mere conversion of the valve of the reissue into the valve of the later patent—a redesigning of the recesses, a shortening of the valve, and shaping the recesses, so that the side walls will hold the valve in line with the port openings. On looking, however, at the failures of prior plate valves to accomplish the aims of the patents herein, and the valuable and extensive use of the latter structure, I am impelled to the conclusion that it was not an obvious expedient to make the indicated improvements over the reissue. It was not merely a filling in of the triangular recesses in the seat and shortening the valve, as defendant's expert, Dorsey, testified, since the evidence establishes, to my mind, redesigning and planning accompanied by inventive skill to accomplish the result.

As to infringement: Defendant's plate valve is of the same type as complainant's, though at one end, a distance from the port area, it is clamped or held, leaving the valve part, however, to bend uniformly in opening and closing the port. The valve seat is provided with a depression and overlying extension or tailpiece, which leaves the valve proper to function over the ports as in complainant's patents. The depression and tailpiece are located at the extreme end of the plate, and the opening and closing movements of the plate are unaffected by its use. It is somewhat loose, or sufficiently free, to permit arching of the valve, and, at the same time, is controlled and constrained to prevent valve displacement. Bending strains at the end were eliminated by defendant's adaptation, and objectionable fluttering of the valves in operation prevented. In fact, its structure and operation is like the patented valves, and not like Mansfield or Alley, as contended. In defendant's forms of structures, the valve plate bends on a uniform bending line in opening. In clamping the end of the valve strip, defendant retained the uniform bending movement of the valve proper in the same way as in complainant's patents, and in its structure its valve seat is on a plain surface and has no recesses for the valve; the movement of the valve being controlled by the recesses in the cap. In short, defendant's structures embody the various elements in combination of both the reissue claim 3, and claims 1, 4, and 6 of the second patent in suit.

In my opinion, the patents in suit are valid, and are infringed by the model forms of defendant's plate valves in evidence, and accordingly complainant is entitled to a decree, with costs.